# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>ANGEL AMAYA,<br><br>  Defendant. | No. CR11-4065-MWB<br><br>**ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *B. Objections To Report and Recommendation* . . . . . . . . . . . . . . . . . . . 13
      *1. Misidentification of defendant Amaya's trucks* . . . . . . . . . . 13
      *2. Lack of evidence of controlled substances sales at residence* . 14
      *3. Staleness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# I. INTRODUCTION AND BACKGROUND

## *A. Procedural Background*

On May 18, 2011, an Indictment was returned against defendant Angel Amaya and three co-defendants charging them with conspiracy to possess with intent to distribute 50 grams or more of pure methamphetamine or 500 grams of methamphetamine, 5 kilograms or more of cocaine, and marijuana, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846.[1] On June 10, 2011, defendant Amaya filed a motion to suppress evidence in which he seeks to suppress evidence seized during a search of his residence conducted pursuant to a search warrant, during a consent search of his parents' trailer home, and during a search of his vehicle. He also requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the affidavit submitted in support of the search warrant application for his residence. Defendant Amaya argues that the affidavit submitted in support of the search warrant application for his residence was insufficient to establish probable cause to support the issuance of the warrant. Thus, he argues the evidence was found in violation of the Fourth Amendment of the United States Constitution. Defendant Amaya also argues the information in the affidavit was stale. He further argues that the law enforcement officer who obtained the search warrant withheld information from the issuing magistrate that, if it had been disclosed, would have resulted

---

[1] On July 28, 2011, a Superceding Indictment was returned against defendant Amaya, and five co-defendants charging them with conspiracy to possess with intent to distribute 50 grams or more of pure methamphetamine or 500 grams of methamphetamine, 5 kilograms or more of cocaine, and marijuana, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846. In addition, the Superceding Indictment charges defendant Amaya and three co-defendants with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(1)(B)(ii), and 1956(h).

in the warrant not being issued. Amaya contends that if these facts had been disclosed to the issuing magistrate, she would not have issued the search warrant, and argues that the items seized from his residence pursuant to the warrant should be suppressed under *Franks*, 438 U.S. at 154. Amaya further seeks suppression of evidence seized during a consent search of his parents' trailer home as "the fruit of the poisonous tree" because it followed from the allegedly defective search of his house. Finally, defendant Amaya requests the court suppress evidence seized from his vehicle at the time of his arrest. The prosecution filed a timely resistance to defendant Amaya's motion.

Defendant Amaya's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). On July 7, 2011, Judge Zoss conducted an evidentiary hearing. On August 8, 2011, Judge Zoss filed a Report and Recommendation in which he recommends that defendant Amaya's motion to suppress be denied.

In his Report and Recommendation, Judge Zoss concluded the facts contained in the search warrant application were more than sufficient for the magistrate to conclude that drugs or other evidence of criminal activity likely would be found at Amaya's residence. Judge Zoss further concluded that while the evidence from an informant was several months old, recently developed evidence was included in the search warrant application which prevented the information from being stale. Alternatively, Judge Zoss found that even if probable cause did not support the search warrant, suppression of the evidence seized pursuant to that warrant is not appropriate because the *Leon* good-faith exception applies. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984). In addition, Judge Zoss found defendant Amaya had failed to establish a *Franks* violation because he offered no evidence to show that the law enforcement officer who signed the search warrant affidavit intentionally or recklessly omitted from the affidavit information that would have been

"clearly critical" to a finding of probable cause. Judge Zoss further concluded that defendant Amaya's challenge to the consent search of his parents' trailer as "the fruit of the poisonous tree" should be denied because the search warrant was not unlawful. Judge Zoss also concluded that defendant Amaya lacked standing to challenge the search of his parents' trailer. Finally, Judge Zoss found defendant Amaya failed to establish any grounds for suppressing anything seized during the search of his vehicle.[2] Therefore, Judge Zoss recommended that defendant Amaya's Motion to Suppress be denied.

Defendant Amaya has filed objections to Judge Zoss's Report and Recommendation. The prosecution filed a timely response to defendant Amaya's objections. I, therefore, undertake the necessary review of Judge Zoss's recommended disposition of defendant Amaya's motion to suppress.

### B. *Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> On February 16, 2011, Didier Cancino-Torres was indicted in this court on drug distribution charges. *See United States v. Cancino-Torres*, 11 CR 4013, *Superseding Indictment*, Doc. No. 13. On March 2, 2011, federal agents conducted a proffer interview of Cancino. Gov't Ex. 2, pp. 1-5. Cancino initially minimized the extent of his drugs dealings, but admitted that he had obtained methamphetamine from someone named "Angel"on two occasions. He stated that his first purchase of methamphetamine from Angel was two ounces and the second was three and one-half ounces. Later in the interview, Cancino was warned by the agents not

---

[2] Judge Zoss noted that the prosecution represented that no evidence seized from defendant Amaya's vehicle will be offered by it at trial. Report and Recommendation at 13-14.

to lie, and after he consulted privately with his attorney, he admitted that he had purchased a total of a pound and a quarter of methamphetamine from Angel. Later in the interview he admitted that the quantity might have been larger. Cancino provided the agents with Angel's telephone number, and told them that Angel drove a dark gray or blue/gray 2003 or 2004 Dodge pickup and lived in a trailer off of Morningside Avenue near a gas station.[3]

On April 4, 2011, Cancino signed a plea agreement in which he agreed to cooperate with law enforcement. Doc. No. 51-1, 11 CR 4013. On April 27, 2011, Cancino gave a second proffer to the drug agents. *Id.*, pp. 6-8. He was shown a copy of the report of his first interview and was asked for any corrections. In response, he described additional drug dealing activities with Angel. He also identified Amaya from a photograph as being the "Angel" with whom he had been dealing. The next day, on April 28, 2011, Cancino pled guilty to four drug distribution charges in this court. Doc. No. 53, 11 CR 4013.

The officers then conducted at least one "trash pull" at Amaya's residence. They found vacuum-sealed bags, one of which smelled strongly of marijuana; two digital scale boxes; and loose plastic wrap consistent with wrappings used to bundle drugs. On May 6, 2011, officers performed a traffic stop on a vehicle being driven by Amaya and arrested him on traffic charges. A police dog alerted to the passenger seat of the vehicle, and the vehicle was searched. They seized two cell phones, but no drugs or contraband was discovered in the vehicle. The defendant made no statements after his arrest.

---

[3]This address turned out to be the address of Amaya's parents, where the government contends Amaya engaged in drug-dealing activities.

>DEA officers then obtained a State of Iowa search warrant to search Amaya's residence in Sioux City. During the search, the officers seized a quantity of cocaine, a motorcycle, a camcorder, and a bill of lading. The officers then went to a trailer where Amaya's parents lived, and Amaya's parents gave the officers consent to search the trailer. During that search, the officers seized several vacuum-sealed bags, some carbon paper, and some drug records, all of which the government contends belong to Amaya.

Report and Recommendation at 2-3. Judge Zoss also made the following findings of fact concerning the search warrant application for Amaya's house:

>In the present case, in Special Agent Jensen's affidavit in support of the search warrant, he recited the following:
>
>>On 05-05-11, agents of the DEA Tri-State Task Force conducted a trash pull at 2503 Williams Ave., Sioux City, IA. Agents had previously received historical information provided by Didier Cancino-Torres that AMAYA was a crystal methamphetamine distributor that lived in the Transit Plaza area. Cancino further stated Cancino purchased a total of 1.25 pounds of crystal methamphetamine in the Fall to Winter of 2010. Cancino described a Dodge pick-up that AMAYA drove at the time that agents subsequently located at 2503 Williams and is still parked in the driveway as of 05-07-11. Agents have conducted surveillance in May, 2011, of AMAYA and determined 2503 Williams is the residence of AMAYA. On 05-05-11, there were two garbage containers at the curb that contained the following items: Two vacuum-sealed bags, one of which smell [sic] strongly of raw marijuana, two digital scale boxes, commonly used in the distribution of drugs, and several

6

> pieces of loose plastic wrap consistent with wrapping drug bundles agents have observed in past drug investigations.
>
> On 05-06-11, AMAYA was arrested by agents for Conspiracy to Distribute Methamphetamine, Cocaine, and Marijuana. AMAYA was traffic stopped by officers on 05-06-11 and a K-9 alerted to the passenger seat of AMAYA's GMC Yukon. Seized during the traffic stop were two cell phones, an Apple I-Phone and an LG cell phone belonging to AMAYA.
>
> It has been my experience that in previous drug investigations that drug distributors use cell phones to store data, including drug customer numbers, text messages, photos, and incoming/outgoing phone contacts. Drug traffickers also store drugs, drug pay/owe sheets, drug monies, drug paraphernalia, and other items indicative of drug trafficking in their residences for personal use, later sale, and concealment.
>
> Gov't Ex. 1, p. 7.

Report and Recommendation at 7-8. Upon review of the record, I adopt all of Judge Zoss's factual findings that have not been objected to by defendant Amaya.

## II. LEGAL ANALYSIS

### A. *Standard Of Review*

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or

> recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004)

(noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373

9

(N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even

if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[4]

---

[4] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we
(continued…)

As noted above, defendant Amaya has filed objections to Judge Zoss's Report and Recommendation. I, therefore, undertake the necessary review of Judge Zoss's recommended disposition of defendant Amaya's motion to suppress.

---

[4](…continued)
review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

### B. Objections To Report and Recommendation

#### 1. Misidentification of defendant Amaya's trucks

Defendant Amaya objects to the misidentification of two trucks used by him. Specifically, defendant Amaya objects to the portion of the Report and Recommendation which states: "on the day the search warrant was issued, a drug dog alerted to Amaya's vehicle. The vehicle was routinely parked in the driveway of Amaya's residence." Report and Recommendation at 9. Defendant Amaya contends that this portion of the Report and Recommendation is referring to a GMC Yukon but the search warrant affidavit does not support this finding.

The search warrant application refers to defendant Amaya using two trucks. First, a dark gray or blue/gray 2003 or 2004 Dodge pickup was identified by Cancino as being the vehicle Amaya drove at the time Cancino purchased methamphetamine from Amaya. This vehicle was seen parked in the driveway of defendant Amaya's home on May 5, 2011. The second vehicle, a GMC Yukon, was seized following a traffic stop and a drug dog's alert to the front passenger seat on May 6, 2011. Defendant Amaya was arrested at that time on drug offenses.

To the extent the Report and Recommendation appears to find that the GMC Yukon "was routinely parked in the driveway of Amaya's residence," this finding is not supported by facts in the record. The Dodge pickup is the only vehicle referred to in the search warrant application as being seen or found parked at defendant Amaya's residence. Therefore, this objection to the Report and Recommendation is sustained. However, this fact does not affect my conclusion regarding probable cause. Although the Dodge pickup was the only vehicle placed at defendant Amaya's residence in the search warrant application, this is the vehicle identified by Cancino as being used by Amaya when he sold methamphetamine to Cancino.

### 2. *Lack of evidence of controlled substances sales at residence*

Defendant Amaya also objects to Judge Zoss's failure "to consider that there is nothing to show controlled substances are being sold from [defendant Amaya's] residence." Defendant's Obj. at 1. Defendant Amaya argues that in the absence of such evidence from the search warrant application, that document lacks probable cause for a search of his residence. Defendant Amaya misunderstands the appropriate standard for issuance of a search warrant and seems to believe that in order to justify a search warrant, the affidavit must establish probable cause of drug dealing. The absence of evidence of drug dealing occurring at defendant Amaya's residence is not dispositive on the issue of probable cause. Rather, "'[i]f an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.'" *United States v. Hudseth*, 525 F.3d 667, 675 (8th Cir. 2008) (quoting *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007)) (quoting in turn *Illinois v. Gates*, 462 U.S. 213, 238 (1983))(internal quotation marks omitted). "'Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts.'" *Id*. (quoting *Grant*, 490 F.3d at 631-32) (quoting in turn *Gates*, 462 U.S. at 236) (internal quotation marks omitted). Sufficiency of the affidavit is not determined by a piecemeal approach, and the elements of the affidavit should not be read in isolation. *United States v. Sumpter,* 669 F.2d 1215, 1218 (8th Cir. 1982). "Applications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ventresca,* 380 U.S. 102, 109 (1965); *accord United States v. Ryan,* 293 F.3d 1059, 1061 (8th Cir. 2002) ("Search warrant '[a]pplications and affidavits should be read with common sense

and not in a grudging hyper technical fashion.'" ) (quoting *United States v. Goodman,* 165 F.3d 610, 613 (8th Cir. 1999)).

The search warrant application affidavit contained information from Cancino, a cooperating individual, that Amaya was a large-scale drug dealer. Cancino also described the vehicle Amaya was driving. Cancino's information was corroborated when the officers located the vehicle described by the informant parked in Amaya's driveway. In a trash pull at Amaya's residence, officers found items consistent with drug dealing activities, including a bag smelling strongly of marijuana and two digital scale boxes.[5]

---

[5] The results of the trash pull alone would have been sufficient to generate probable cause to search defendant Amaya's house. *See United States v. Timley,* 443 F.3d 615 (8th Cir. 2006); *United States v. Briscoe,* 317 F.3d 906, 907–08 (8th Cir. 2003). In *Timley,* the Eighth Circuit Court of Appeals referred to the trash search in *Briscoe* and stated:

> Similarly here, the trash pulls established probable cause to believe Timley, or someone else at Timley's residence, was engaged in distribution of marijuana. One trash pull revealed eleven baggies with marijuana residue on them, leading to the inference that marijuana had been or was being packaged for distribution. Moreover, on the other trash pull, officers found a quantity of marijuana in a large trash bag, leading to an inference that marijuana had been transported in that bag and that it was more than a user quantity. As in *Briscoe,* distribution of marijuana is both a federal and state crime. 21 U.S.C. § 841(b)(1)(D); Mo.Rev.Stat. § 195.211.

*Timley,* 443 F.3d at 625. The Eighth Circuit Court of Appeals concluded that the information regarding the two "trash pulls" was sufficient probable cause to support the warrant's issuance. *Id.* In this case, Agent Jensen came across a vaccum-sealed bag that smelled strongly of raw marijuana as well as two boxes for digital scales, which are commonly used to distribute drugs, and loose plastic wrap, which was consistent with wrapping materials Agent Jensen had observed in past investigations. The discovery of

(continued…)

Then officers made a traffic stop of Amaya's vehicle, and a drug dog alerted to the passenger seat. Two cell phones were found in the vehicle. Considering the totality of the circumstances in a commonsense, practical way, I find that the search warrant affidavit would lead a prudent person to believe that there was a fair probability that drugs or evidence of drug sales would be found in defendant Amaya's residence. *See Gates,* 462 U.S. at 238; *Hudseth*, 525 F.3d at 675; *Grant,* 490 F.3d at 631. Accordingly, I find probable cause existed to issue the search warrant and defendant Amaya's objection is overruled.[6]

---

[5](…continued)
these items in the trash at defendant Amaya's residence is enough to establish probable cause. Defendant Amaya argues that Agent Jensen's affidavit lacks sufficient detail about his training and experience to support the assertions he makes in his affidavit regarding the smell of marijuana, or the use of digital scales and plastic wrapping in drug trafficking. As the court reads Agent Jensen's affidavit, he indicates that he has been employed as a Special Agent with the Drug Enforcement Administration ("DEA") for nine years and is assigned to the DEA Tri State Drug Task Force, Sioux City, Iowa. Moreover, he avers that he has training and experience regarding drug traffickers' keeping of drug transaction and communication records as well as their use of tools of the drug trade. Although Agent Jensen could clearly have added additional pertinent details to his affidavit concerning his work history and training in law enforcement, from the information contained in his affidavit the reviewing magistrate could clearly find he is a experienced and well-qualified in the investigation of drug crimes. Experienced law enforcement officers may "'draw reasonable inferences from the facts based on their training and experience.'" *United States v. Hicks*, ---F.3d---, 2011 WL 2084070, at *8 (7th Cir. May 27, 2011) (quoting *United States v. Elst,* 579 F.3d 740, 746 (7th Cir. 2009)). The magistrate reviewing Agent Jensen's factual basis for probable cause was entitled to rely on Jensen's experience and any reasonable inferences drawn from that experience.

[6]However, even if there was no probable cause to issue the search warrant, the *Leon* good-faith exception applies here. "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search
(continued…)

### 3. *Staleness*

Defendant Amaya also objects to Judge Zoss's conclusion that the information contained in the search warrant application was not stale. Defendant Amaya contends that the information provided concerning the alleged methamphetamine sales between him and Cancino was stale and, as a result, probable cause did not exist at the time the search warrant was issued.

"It is axiomatic that probable cause must exist at the time of the search and not merely at sometime earlier." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005); *see United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998); *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995). Therefore, a lapse of time, between the observations of a witness and the issuance of a search warrant "may make probable cause fatally stale." *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995). However, the Eighth Circuit Court of Appeals has instructed that: "'We have no 'fixed formula' for deciding when information has become stale, but we consider the nature of the crime being investigated and the property to be searched.'" *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008) (quoting *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006) (citation omitted)); *see Maxim*, 55 F.3d at 397. Thus, the passage of time alone is "not

---

[6](…continued)
warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *Grant,* 490 F.3d at 632. "In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit, and we confine our inquiry to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* (internal quotation marks and citations omitted). Here, based on the affidavit, a reasonably well-trained officer would not have known that the search was illegal despite the issuing magistrate's authorization.

always the controlling factor," since other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," may also be relevant to the staleness calculus. *Maxim*, 55 F.3d at 397 (citing *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)). Moreover,"'where recent information corroborates otherwise stale information, probable cause may be found.'" *Ozar*, 50 F.3d at 1446 (quoting *United States v. Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990)). "The passage of time between the transactions on which a warrant is based and the ensuing search is less significant when the facts recited indicate activity of a continuous nature." *United States v. Jones*, 801 F.2d 304, 314 (8th Cir.1986); *see also United States v. Rugh*, 968 F.2d 750 (8th Cir. 1992). As the Second Circuit Court of Appeals has noted: "'[N]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.'" *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990). The Eighth Circuit Court of Appeals has similarly observed that: "'In investigations of ongoing narcotic operations, "intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'"" *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001) (quoting *Formaro*, 152 F.3d at 771); *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) ("'With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity.'") (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)).

The search warrant application reflects an investigation of drug trafficking. The search warrant application detailed Cancino's purchase of 1.25 pounds of methamphetamine from defendant Amaya beginning in the fall of 2010 and continuing into the winter of 2011. The search warrant application was further supported by Agent Jensen's finding of materials in a trash pull at Amaya's residence the day before the search

warrant was issued. Then, on the day the search warrant was issued, when officers made a traffic stop of Amaya's vehicle, a drug dog alerted to the passenger seat and two cell phones were found in the vehicle. Therefore, considering the totality of the information provided to the state magistrate, I conclude the search warrant for defendant Amaya's residence was not based on stale information. *See Smith*, 266 F.3d at 905; *Formaro*, 152 F.3d at 771; *see also United States v. Hartje*, 251 F.3d 771, 775 (8th Cir. 2001)(concluding that a drug transaction one month prior to the search warrant application did not constitute stale information in light of the ongoing nature of the crime). Therefore, this objection is also overruled.

### III. CONCLUSION

Therefore, for the reasons set forth above, I, upon a *de novo* review of the record, accept Judge Zoss's Report and Recommendation and **deny** defendant Amaya's motion to suppress.

**IT IS SO ORDERED.**
**DATED** this 6th day of September, 2011.

*/s/ Mark W. Bennett*
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA