**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| | | No. CR 11-4065-MWB |
| Plaintiff, | | |
| vs. | | |
| | | **MEMORANDUM OPINION AND ORDER REGARDING THE DEFENDANTS' POST-TRIAL MOTIONS** |
| ANGEL AMAYA and JAVIER AMAYA, | | |
| Defendants. | | |

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**............................................................3
     A.   *The Indictment* ..................................................... 3
     B.   *The Two Mistrials* ................................................ 4
     C.   *The Third Trial* .................................................. 6
         1.   *Pre-trial matters* ......................................... 6
         2.   *Trial proceedings* ......................................... 7
             a.   *The "vouching" incident* ......................... 7
             b.   *The motion for mistrial* .......................... 9
             c.   *Further trial proceedings* ...................... 11
         3.   *Verdict and post-verdict proceedings* ................. 14
     D.   *Post-Trial Motions*........................................... 17

II.   **LEGAL ANALYSIS** ................................................ 18
     A.   *Standards For Post-Trial Relief*............................. 18
         1.   *Motions for judgment of acquittal* ................... 18
         2.   *Motions for new trial* ............................... 21
         3.   *Plain error* ......................................... 23
     B.   *Relief From The Drug Conspiracy Conviction*................ 27
         1.   *Sufficiency of the evidence* .......................... 28
             a.   *Arguments of the parties* ....................... 28
             b.   *Analysis* ....................................... 29
         2.   *The effect of improper vouching* ..................... 33

   **a.** ***Arguments of the parties*** ......................................... **33**
   **b.** ***Analysis*** ............................................................. **34**
  **3.** **Summary** .................................................................. **39**
 **C.** ***Relief From The Money-Laundering Conviction*** .......................... **39**
  **1.** ***The elements of the offense*** ......................................... **39**
   **a.** ***Proof of a substantive money-laundering offense*** ......... **40**
    **i.** ***Arguments of the parties*** .............................. **40**
    **ii.** ***Analysis*** .................................................. **41**
   **b.** ***The "knowledge" element*** ..................................... **49**
    **i.** ***Arguments of the parties*** .............................. **49**
    **ii.** ***Analysis*** .................................................. **50**
  **2.** ***Sufficiency of the evidence*** ........................................ **53**
   **a.** ***Arguments of the parties*** ..................................... **53**
   **b.** ***Analysis*** ...................................................... **55**
  **3.** ***Other errors*** ........................................................ **57**
   **a.** ***"Vouching"*** .................................................... **57**
   **b.** ***The answer to the jurors' first note*** .......................... **58**
   **c.** ***Burden of proof*** ................................................ **59**
   **d.** ***Verdict form*** ................................................... **61**
    **i.** ***Arguments of the parties*** .............................. **61**
    **ii.** ***Analysis*** .................................................. **64**
  **4.** **Summary** .................................................................. **71**

**III.** ***CONCLUSION*** ................................................................. **71**

As one defendant asserts, this case, involving drug conspiracy and money-laundering conspiracy charges, was jinxed from the outset. The first two jury trials resulted in mistrials during the testimony of the prosecution's same first witness. Although the third trial survived yet another motion for mistrial on the first day and finally reached a jury verdict, the defendants, two brothers, have filed post-trial motions attacking their convictions. One brother, Angel Amaya, who is charged with both conspiracies, asserts that judgment of acquittal is appropriate, because the evidence is insufficient to convict him of either conspiracy offense; that another mistrial is warranted, because the prosecutor improperly vouched for a witness; and that a new trial is required, because an error in the verdict form suggested that, if one brother was guilty of the money-laundering conspiracy, they must both be guilty. The other brother, Javier Amaya, who is charged only with the money-laundering conspiracy, asserts that he is entitled to judgment of acquittal, because proof of a money-laundering conspiracy requires proof of at least one substantive money-laundering offense, which was lacking here, and that he is entitled to a mistrial or a new trial, because of an error in the verdict form, an erroneous supplemental instruction on conspiracies, and insufficiency of the evidence. The prosecution argues that the jury's verdicts should stand and that this case should proceed to sentencing for both defendants.

## I. INTRODUCTION

### A. The Indictment

In **Count 1** of a Superseding Indictment (docket no. 77), handed down July 28, 2011, defendant Angel Amaya and four co-defendants were charged with a drug conspiracy offense, alleging a conspiracy to possess with intent to distribute

methamphetamine, cocaine, and marijuana, in violation of 21 U.S.C. § 846. In **Count 2**, Angel Amaya, his brother Javier Amaya, and two other co-defendants were charged with a money-laundering conspiracy offense, alleging a conspiracy to conduct financial transactions involving the proceeds of unlawful drug activity, (a) with intent to promote the carrying on of that unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (b) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of that unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and (c) to avoid a transaction reporting requirement under federal law, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii), all in violation of 18 U.S.C. § 1956(h). Four of the Amayas' co-defendants subsequently pleaded guilty to the charge or charges against them, but the Amayas proceeded to trial.

### B. The Two Mistrials

The first attempt to try the Amayas on the charges against them began on October 11, 2011. However, I declared a mistrial that day, when the prosecution's first witness, a government agent, referred to material barred by a sealed ruling on a motion in limine. *See, e.g.*, Hearing Minutes (docket no. 220); Memorandum Opinion And Order Regarding Defendants' Oral Motion To Dismiss With Prejudice (docket no. 292) (sealed).[1] The second attempt to try the Amayas began on December 19, 2011, but it fared no better. I granted another mistrial on the first day, again during the testimony of the prosecution's first witness, the same government agent, when that witness disclosed for the first time the use of GPS devices to collect evidence in this case. *See* Text Order (docket no. 266). I then entertained briefing on whether or not

---

[1] The ruling on the motion in limine had not been provided to the agent prior to his testimony.

the second mistrial should result in dismissal with prejudice based on prosecutorial misconduct. On January 26, 2012, after considering the parties' briefs and hearing oral arguments, I concluded that the defendants had failed to meet the demanding standard for dismissal with prejudice after a mistrial. *See* Memorandum Opinion And Order Regarding Defendants' Oral Motion To Dismiss With Prejudice (docket no. 292) (sealed).

By Order (docket no. 296), filed January 31, 2012, I set deadlines for filing and briefing of any motions to suppress GPS evidence, in light of the United States Supreme Court's ruling on GPS evidence in *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945 (2012), which, coincidentally, had been handed down just a week earlier. On February 9, 2012, Angel filed such a Motion To Suppress-GPS System (docket no. 299), which the prosecution resisted. On April 10, 2012, I entered a Memorandum Opinion And Order Regarding Defendant's Motion To Suppress GPS System (docket no. 350). *See also United States v. Amaya*, 2012 WL 1188456 (N.D. Iowa April 10, 2012) (slip op.). In that Order, I rejected Angel's challenge to the GPS evidence based on a constitutional violation, because the government had acted in good faith reliance on existing circuit precedent, but I found that the government agent's failure to disclose the GPS evidence had been in bad faith. Consequently, I set a hearing for April 20, 2012, to determine whether a sanction less severe than evidence suppression, such as taking away the prosecution's peremptory strikes and/or rebuttal closing argument, was appropriate to punish the prosecution for its discovery violation. By Order (docket no. 359), filed April 12, 2012, I reset the sanctions hearing for April 30, 2012.

On April 18, 2012, the prosecution filed a Motion To Reconsider (In Part) And Memorandum On Imposition Of Sanctions (docket no. 362), asking me to reconsider my finding of bad faith by the government agent. I consolidated the hearing on that motion with the hearing on sanctions by Text Order (docket no. 371), entered April 25,

2012. After the sanctions hearing on April 30, 2012, I entered a Memorandum Opinion And Order Regarding The Imposition Of Sanctions And The Prosecution's Motion To Reconsider (docket no. 377) on May 1, 2012. *See United States v. Amaya*, ___ F. Supp. 2d ___, 2012 WL 1523045 (N.D. Iowa May 1, 2012). In that Order, I granted the prosecution's Motion To Reconsider, withdrew the portion of my prior opinion in which I had found that the government agent had acted in bad faith, and determined that no sanctions should be imposed on the prosecution for failure to disclose the use of GPS devices.

## C.     *The Third Trial*

By Order (docket no. 356), filed April 11, 2012, the jury trial in this matter was reset to begin on May 29, 2012, and the third attempt to try the Amayas began as scheduled. *See* Hearing Minutes (docket no. 394). Both because that third trial actually ran through a jury verdict and because it is the trial at issue in the Amayas' post-trial motions, I will discuss those proceedings in greater detail.

### 1.     *Pre-trial matters*

According to my usual practice, prior to trial, I provided the parties with my proposed jury instructions and verdict forms for their review, objections, and comments. This case was unusual in that I had prepared and disseminated proposed and "final" versions of the jury instructions on three separate occasions, before each of the trial dates. More specifically, on May 21, 2012, at my direction, a member of my staff e-mailed all counsel the last version of the jury instructions prepared for the prior trial date, in December 2011, which, in turn, had been essentially identical to the last version of the jury instructions prepared for the first trial date, in October 2011. On May 23, 2012, I provided a "final" version of the jury instructions, reflecting some

changes that I had made in response to Angel's counsel's comments. That was the version of the jury instructions ultimately read to the jurors.

### 2. Trial proceedings

Also according to my usual practice, at the beginning of the Amayas' third trial, I read all but the last two jury instructions to the jurors prior to the parties' opening statements, and reserved only instructions on "deliberations" to be read after the parties' closing arguments. Although this trial proceeded past the first witness without a hitch, the jinx on the case continued, because the first day of the third trial did not pass without another motion for mistrial. In this instance, however, I was the one to point out a potential problem.

#### a. The "vouching" incident

Specifically, late in the afternoon of May 29, 2012, during the redirect of witness Jorge Aguilar, the following exchange occurred:

> Q [BY THE PROSECUTOR]. Angel Amaya's lawyer asked you about—something about jump and you see how high but you don't really know how high. Do you remember that?
>
> A. Uh-huh, yes.
>
> Q. Prior to—after you initially lied to the government during your first statements and then you got a lawyer and you decided to cooperate, and you provided additional information—
>
> A. Correct.
>
> Q. You remember that? Prior to you doing that did the government explain to you what information they had?
>
> A. Yes. Well, I read some—some documents.
>
> Q. Sure. In your discovery file.

A.    Right.

Q.    And they're given out to everybody.

A.    Right.

Q.    What information did you provide today in court that's not true because you're trying to get a better deal?

A.    Nothing.

Q.    Do you think if you wanted to as you sit there even though you've used all this marijuana you could make up stuff worse than you said today about these defendants if you wanted to?

A.    No.

Q.    You couldn't have said Angel or Javier used drugs?

A.    Well, I was telling the truth.

Q.    Exactly.

[THE PROSECUTOR]:  I have nothing further, Your Honor.

[COUNSEL FOR ANGEL AMAYA]:    Nothing further, Your Honor, from me.

[COUNSEL FOR JAVIER AMAYA]:    Nothing further.

THE COURT:  Okay.  You may step down. . . .

Realtime Trial Transcript for May 29, 2012 (prosecution's redirect of witness Jorge Aguilar).

Immediately after the jurors exited the courtroom for the day, the following exchange occurred:

THE COURT:  . . .  Mr. [Prosecutor], with regard to witness Jorge Aguilar, it was the very last question you

asked him. I could call it up on the real time about—and he responded that he was being truthful and then you responded exactly. Exactly is a declarative statement. It's not a question, so it has no place in the record, and it's vouching for the witness when you do that. And I know you didn't probably intentionally mean to do it but that's exactly what vouching is when the witness says I'm being truthful and you say exactly. That's vouching. And it's inappropriate, and it's unethical. It's the cannon of ethics that you can't vouch for a witness, so it's not going to happen again; correct?

[THE PROSECUTOR]: Correct, Your Honor.

THE COURT: And I assume it was totally inadvertent.

[THE PROSECUTOR]: I—sort of a reaction.

THE COURT: Yes, I understand that. Okay. That's why I didn't say anything at the time.

We'll see you tomorrow morning at 8:30. Thank you.

Realtime Trial Transcript for May 29, 2012 (proceedings outside of the jury's presence).

Neither of the defendants' attorneys made any objection or comment, either at the time of the prosecutor's statement that I had found troublesome or at the time that I commented upon the prosecutor's statement outside of the jury's presence. Instead, after the portion of the proceedings quoted just above, the trial adjourned for the day.

### b.    *The motion for mistrial*

Notwithstanding the lack of a contemporaneous objection or comment, counsel for Angel filed a Motion For Mistrial And/Or Curative Instruction (docket no. 393) on the court's electronic docketing system after regular business hours on May 29, 2012. Angel's counsel argued in his Motion that, when the prosecutor vouches for a witness,

9

it is plain error that may warrant reversal of the defendant's conviction, a mistrial, or a curative instruction. He argued that I should grant yet another mistrial, but if I did not, I should give a curative instruction to the effect that the United States Attorney's Office cannot vouch for the credibility of any of its witnesses and that it is up to the jury to determine to what extent witnesses are credible or to be believed.

I took up Angel's Motion For Mistrial the following morning before the jury was brought in. At that time, Angel argued that the options available to the court when improper vouching occurs include a mistrial or a curative instruction. The prosecution argued that the comment was fleeting and did not so infect the trial as to deprive either defendant of a fair trial. Angel then reiterated his request for a curative instruction, with little or no reference to the circumstances prompting the instruction, suggesting that those jurors who heard the prosecutor's comment would know to what the curative instruction referred, but a detailed explanation of the incident would call undue attention to it. Angel's counsel admitted that he had not even heard the prosecutor's comment when it occurred, but that he did not know whether or not any of the jurors had heard it.

I agreed to give a curative instruction, but I declined to give one "in the abstract," with no reference to a particular incident, nor was I willing to characterize the prosecutor's comment as "unintentional" or "inadvertent." The defendants and the prosecutor ultimately had no objection to an instruction making limited reference to the circumstances that prompted the instruction and explaining that it is improper for the lawyers (not just the prosecutor) to vouch for the credibility of witnesses. *See* Realtime Trial Transcript for May 30, 2012 (proceedings outside of the jury's presence).[2]

---

[2] At the oral arguments on the Amayas' post-trial motions, Angel's counsel asserted that he only agreed to the form of the "curative" instruction *if I was not going to grant a mistrial*, but that he had not agreed that a mistrial was not necessary or that

After the jurors returned to the courtroom on the morning of May 30, 2012, I provided the following oral curative instruction:

> There was something that happened yesterday that I wanted to talk to you about. Some of you may have picked up on it. Some of you may not. At the end of a witness's testimony the prosecutor said something that—we have a term for it. We call vouching for the credibility of the witness, in other words, implying either indirectly or directly that the witness is telling the truth. And that's impermissible, should not have happened. And so the lesson is that you are the sole judges of the credibility of the witnesses. You decide whether a witness is telling the whole truth, none of the truth, or just some of the truth. My opinion about the credibility of the witnesses, the lawyers' opinions about the credibility of the witnesses, they're not important. What's important is your judgment. And to the extent that a lawyer would either intentionally or unintentionally say something that would imply that they think the witness is telling the truth, you have to completely disregard that. They're advocates, and so they get caught up in the moment. But you're not advocates. You're impartial judges. And that's what I wanted to talk to you about.

Realtime Trial Transcript for May 30, 2012 (proceedings with jury present).

### c.   *Further trial proceedings*

The trial continued on May 30, May 31, and June 1, 2012. The prosecution rested midmorning on June 1, 2012, and the defendants rested immediately thereafter without calling any witnesses. After a brief recess, I heard the defendants' motions for judgments of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. In the course of those arguments, the prosecutor conceded that, as to Javier, the prosecution had not proved the third objective of the money-laundering conspiracy,

___

the curative instruction necessarily mitigated any and all potential prejudice from the "vouching" incident.

avoidance of transaction reporting requirements under federal law, but disputed all of the defendants' other arguments for judgments of acquittal. I denied Angel's Rule 29 motion, but took Javier's under advisement. In light of the prosecutor's one concession, however, I discussed simply having the jurors cross out the third objective of the money-laundering conspiracy on the verdict form for Javier, and the parties agreed to that course.

After a longer recess, the jurors returned to the courtroom, and I read and provided them with written copies of Supplemental Instruction No. 1 – Single Or Multiple Conspiracies, based on Angel's proffered supplemental instruction, which was based, in turn, on 8th Cir. Criminal Model 5.06G (2011). I also directed the jurors to cross out the third alleged objective of the money-laundering conspiracy in the verdict form for Javier and explained that there was "absolutely no evidence in the record that would support that third objective with regard to Defendant Javier Amaya," so that objective had been withdrawn. The parties then presented their closing arguments, I read the final two jury instructions on "deliberations," and the jurors left the courtroom shortly after 1:00 p.m. to begin their deliberations.

After the case was submitted to the jurors, Javier's counsel initiated a discussion in which he seemed to suggest that, to prove the money-laundering conspiracy, the prosecution had to prove beyond a reasonable doubt that at least one objective of the conspiracy was committed. I pointed out that, if he was lodging an objection to the jury instructions, the objection was untimely, and that his argument was contrary to governing law. Javier's counsel conceded that he was not asking me to do anything.

At 4:38 p.m., I met with the parties to discuss a note from the jurors. That note read,

> We need further clarification on element three on page 10 in the jury instructions.

We are confused or need clarification on the indented paragraph. The sentences seem contradictory.

Jury Questions (docket no. 400), 1. The portion of the jury instructions to which the jurors' note referred was the explanation to element *three* of a conspiracy offense. That element and the explanation were as follows:

> **Three, at the time that the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.**
>
> > Without knowledge of the purpose of the conspiracy, the defendant cannot be guilty of the conspiracy offense, even if his acts furthered the conspiracy. The prosecution does not have to prove that the defendant knew that what he did was unlawful.

Jury Instructions (docket no. 397), No. 5, p. 10. Counsel for both defendants initially argued that a defendant charged with a conspiracy offense must know that the objectives of the conspiracy involved unlawful activity. Both eventually retreated from that argument, *the parties ultimately agreed* to the following response to the jurors' first note, and *no party subsequently objected to it*:

> While the two sentences in the indented explanation to element *three* of a conspiracy, on page 10 of the Instructions, may seem contradictory, they are not. The defendant must have known that the purpose of the conspiracy was to commit one or more of the objectives, but does not have to know that the objectives of the conspiracy were illegal.

Response To Juror Questions (docket no. 400-2), 1.

While I was discussing the jurors' first note with the parties, the jurors sent me another note. That note asked, "Can we have a dictionary please?" Jury Questions

13

(docket no. 400) at 2. The parties agreed to the following response to the jurors' second note:

> The law does not allow the jury to have a dictionary or to do any research on their own.

Response To Juror Questions (docket no. 400-2), 1.

### 3. *Verdict and post-verdict proceedings*

When the jurors received the responses to their notes at about 5:10 p.m. on June 1, 2012, they indicated that they wanted ten or fifteen minutes to let the court and the parties know whether they were going to stay until they reached a verdict or were going to return the following day to continue their deliberations. At 5:28 p.m., the jurors returned to the courtroom with verdicts on the charges against both Amayas.

As I reviewed the verdict form, I immediately recognized—much to my chagrin—that there was a problem with the verdict form for Javier. Nevertheless, I began by announcing the jurors' findings as to Angel. The jurors found that Angel was guilty of the drug conspiracy charged in **Count 1** and that the offense involved 500 grams or more of methamphetamine, 500 grams or more of cocaine, and marijuana. The jurors also found Angel guilty of the money-laundering conspiracy charged in **Count 2** and that the offense involved all three objectives alleged. I then polled the jurors on their verdict as to Angel.

The problem with the verdict form for Javier was that, unlike the part of the verdict form for Angel on the money-laundering conspiracy, it did not include a space for the jurors to mark either "not guilty" or "guilty" as their verdict on the money-laundering conspiracy in **Step 1**, although **Step 1** did ask the jurors to indicate their verdict on that charge. In **Step 2**, the verdict form for Javier, like the verdict form for Angel, asked the jurors, *if they had found Javier guilty of the money-laundering conspiracy,* to mark which one or more money-laundering offenses the conspirators

14

agreed to commit as objectives of the money-laundering conspiracy, and the jurors had marked one objective. I was taken completely by surprise by the omission of a place to indicate a finding of "guilty" or "not guilty" for this defendant. I was also eager to release the jurors as soon as possible, because it was already late on a Friday afternoon, they had provided diligent service during the trial, and some jurors in our district travel more than 100 miles to and from the courthouse each day they serve.

Notwithstanding the error in the verdict form, I proceeded directly to the announcement of the jury's verdict as to Javier, as follows:

> THE COURT: Now, with regard to Javier Amaya, the verdict form is inaccurate because it doesn't have a place for you to check guilty or not guilty in step 1. But you've checked objectives—you checked the second objective, to conceal proceeds of the drug conspiracy. But what I want to know is with regard to Javier Amaya, do you find him guilty in step 1 of the money laundering conspiracy?
>
> [FOREPERSON]: Yes, sir.
>
> THE COURT: And we'll just start in the back row again.
>
> A. Yes, sir. Yes, Your Honor. Yes. Yes. Yes, sir. Yes, sir. Yes, sir.
>
> THE COURT: Front row?
>
> A. Yes, sir. Yes, sir. Yes, sir. Yes, sir. Yes, sir.
>
> THE COURT: And then with regard to step 2, the objectives, you have crossed out the third objective which I had asked you to do before closing arguments. And then there's an X next to the second objective which is to conceal the proceeds of the drug conspiracy. So I just want to make sure that everybody's unanimous intent was to find Javier Amaya guilty of money laundering because that's the only charge he's charged with and to find that it was to conceal the proceeds of the drug conspiracy. And just to be sure,

15

because it's our screw up on the verdict form, we'll start in the back row again. Is that your intent?

A. Yes. Yes. Yes, sir. Yes. Yes, sir. Yes, sir. Yes.

THE COURT: Front row?

A. Yes, sir. Yes, sir. Yes, sir. Yes, sir.

THE COURT: Okay. Thank you. . . .

Realtime Trial Transcript for June 1, 2012 (verdict proceedings). As I was polling the jury, it belatedly occurred to me that the better way to handle the situation would, at the very least, have been to consult with the parties about what to do, or better still, to send the jury back down for further deliberations with a corrected verdict form. Hindsight has only reinforced my certainty that doing either would have been better than polling the jurors on the spot. Unfortunately, in the heat of the moment, I did neither.

After polling the jurors, I excused them, then took up some matters with the parties, and the trial proceedings concluded as follows:

THE COURT: . . . I'll have [the courtroom deputy] make a copy of the verdict form so everybody can see it. There's a screw-up I guess none of us caught on the verdict form. That wasn't—there wasn't a place to check guilty or not guilty, but I think I covered it as best I could. Any other record anybody wants to make at this time?

[THE PROSECUTOR]: I agree with the Court's handling of the jury form issue. I think it was covered correctly. I have no objections to it.

THE COURT: Okay.

[COUNSEL FOR ANGEL AMAYA]: Just renew the Rule 29 motion again for the record, Your Honor.

THE COURT: Sure.

16

[COUNSEL FOR JAVIER AMAYA]: Same, Your Honor.

THE COURT: Okay. Thank you all very much. Thank you. We'll be in recess.

Realtime Trial Transcript for June 1, 2012 (post-verdict proceedings).

Thus, neither of the defendants made any objection to, or comment about, my handling of the problem with Javier's verdict form, either at the time that I discovered the error in his verdict form, at the time that I attempted to resolve the problem by polling the jurors as to their verdict on that charge, or in the post-verdict proceedings. Although it does nothing to diminish my responsibility for and embarrassment about the error in the verdict form, I also note that neither I, nor any member of my staff, nor the parties—including Javier's counsel whose only duty was to look out for his client's interests—had noticed the problem with the verdict form for Javier during preparations for the third trial or in the third trial itself, even when we discussed amendment of Javier's verdict form to eliminate one of the objectives of the charged money-laundering conspiracy. Indeed, my records indicate that the same error in the verdict form for Javier had been in every version of the jury instructions provided to the parties since the first trial in October 2011.

### D.     Post-Trial Motions

On June 5, 2012, Javier filed his renewed Rule 29 Motion For Judgment Of Acquittal (docket no. 412). On June 8, 2012, Javier also filed a Motion For New Trial And Judgment Of Acquittal/Or Renewed Motion For Mistrial (docket no. 417), pursuant to Rules 29 and 33(a) of the Federal Rules of Criminal Procedure. The prosecution filed its combined Resistance (docket no. 435) to Javier's post-trial motions on June 22, 2012. On June 11, 2012, Angel filed his Motion For New Trial And

Judgment Of Acquittal And/Or Renewed Motion For Mistrial (docket no. 422). On June 25, 2012, the prosecution filed its Resistance (docket no. 437) to Angel's motion. On July 20, 2012, the prosecution filed a Supplement To Its Resistance To Defense Motions For New Trial (docket no. 448), citing additional authority for the proposition that a defendant does not have to commit a substantive money-laundering offense to be guilty of a money-laundering conspiracy.

I heard oral arguments on the defendants' post-trial motions on August 2, 2012. At the oral arguments, the United States was represented by AUSA Robert A. Knief of Sioux City, Iowa; defendant Angel Amaya was represented by R. Scott Rhinehart of the Rhinehart Law Firm, P.C., in Sioux City, Iowa; and defendant Javier Amaya was represented by Paul Jason Forney of Kasaby & Nicholls, L.L.C., in Omaha, Nebraska.

The defendants' post-trial motions are now fully submitted.

## II.     LEGAL ANALYSIS

I find that many of the issues raised in the defendants' various post-trial motions—particularly as to the money-laundering conspiracy charged against both of them in **Count 2**—are overlapping. Thus, I find it most convenient and coherent to summarize the standards applicable to post-trial motions in criminal cases, then to consider the defendants' post-trial motions *count-by-count* and *issue-by-issue*, rather than motion-by-motion.

### A.     Standards For Post-Trial Relief

#### 1.     Motions for judgment of acquittal

Rule 29 of the Federal Rules of Criminal Procedure provides for motions for judgment of acquittal based on insufficiency of the evidence, both during and after trial, as follows:

**(a) Before Submission to the Jury.** After the government closes its evidence or after the close of all the evidence, *the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.* The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

**(b) Reserving Decision.** The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

**(c) After Jury Verdict or Discharge.**

**(1) Time for a Motion.** A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

**(2) Ruling on the Motion.** If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

**(3) No Prior Motion Required.** A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

FED. R. CRIM. P. 29(a)-(c) (emphasis added). While the rule specifically allows the court to reserve ruling on a motion for judgment of acquittal made at the end of the

prosecution's case or at the end of all of the evidence, as I did in this case as to Javier's motion at the conclusion of the evidence, when I consider the reserved motion, I must "decide the motion on the basis of the evidence at the time the ruling was reserved." FED. R. CRIM. P. 29(b); *see also United States v. Van Nguyen*, 602 F.3d 886, 897-98 (8th Cir. 2010). In this case, that requirement has no practical effect, because no additional evidence was presented after Javier's Rule 29 motion at the close of the prosecution's case.[3]

What is of more significance here is that the Eighth Circuit Court of Appeals has explained,

> "When a district court considers a motion for acquittal, it does so with 'very limited latitude.' The court should not assess the credibility of the witnesses or weigh the evidence." *United States v. Hernandez*, 301 F.3d 886, 889 (8th Cir. 2002).

*United States v. Starr*, 533 F.3d 985, 997 (8th Cir. 2008). However, the Eighth Circuit Court of Appeals has highlighted that, when the conditions for relief are met, entry of judgment of acquittal is mandatory. *See id.* ("'[T]he [district] court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.'" (quoting FED. R. CRIM. P. 29)); *United States v. Santana*, 524 F.3d 851, 853 (8th Cir. 2008) (same).

---

[3] Although Rule 29(c)(3) makes clear that a motion for judgment of acquittal prior to submission of the case to the jury is not a prerequisite to a post-verdict motion for judgment of acquittal, the Eighth Circuit Court of Appeals expressed "serious doubt whether any court may order an acquittal, as opposed to a new trial, after the jury has returned a guilty verdict" absent "a timely Rule 29(c) motion" immediately post-verdict. *United States v. Huntley*, 523 F.3d 874, 875 (8th Cir. 2008) (per curiam). Here, both defendants renewed their Rule 29 motions immediately after the jury's verdict on all counts against them.

"[T]he pertinent inquiry is whether there is sufficient evidence to support the conviction if the government's evidence is accepted." *Id.* at 998 (citing *United States v. Grover*, 511 F.3d 779, 779 (8th Cir. 2007)). To put it another way, "[a] motion for judgment of acquittal should be granted only 'if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006) (quoting *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999)). More specifically,

> A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged. "The evidence need not exclude every reasonable hypothesis except guilt; the essential elements of the crime may be proven by circumstantial as well as direct evidence."

*United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004) (quoting *United States v. Bennett*, 956 F.2d 1476, 1481 (8th Cir. 1992), in turn quoting *United States v. Nabors*, 762 F.2d 642, 653 (8th Cir. 1985)).

### 2. *Motions for new trial*

In the alternative, the Amayas seek new trials on the charges against them. "'If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed.'" *United States v. Boesen*, 599 F.3d 874, 877 (8th Cir. 2010) (quoting Fed. R. Crim. P. 29(d)(1)). Indeed, it is error for the district court not to do so, at least where the defendant has timely moved, in the alternative, for a new trial. *See Cacioppo*, 460 F.3d at 1025; *Boesen*, 599 F.3d at 877-78 (where the defendant did not move, in the alternative, for a new trial, and the

district court granted his motion for judgment of acquittal, but the appellate court reversed, the defendant's Rule 33 motion for new trial was untimely). Thus, whether or not I grant the Amayas' motions for judgment of acquittal, I must consider their motions for new trial.

As the Eighth Circuit Court of Appeals has explained, the court's authority to grant a new trial is broader than its authority to grant a judgment of acquittal:

> A district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33. The district court's discretion in this regard "is quite broad," *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002), and we review only for an abuse of such discretion, *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). Reversal of a denial of a motion for new trial is rare.

*United States v. Tate*, 633 F.3d 624, 629 (8th Cir. 2011); *but see United States v. Aguilera*, 625 F.3d 482, 486 (8th Cir. 2010) (describing the district court's discretion to grant a new trial under Rule 33 as "broad, but limited," because the standard ultimately is "miscarriage of justice"). The scope of the district court's review of the record on a Rule 33 motion for new trial is also much more generous than it is for a judgment of acquittal under Rule 29: "In ruling on a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, unlike a Rule 29 motion for judgment of acquittal, a district court has discretion to 'weigh the evidence and evaluate the credibility of the witnesses,' but the court must allow the verdict to stand unless a miscarriage of justice may have occurred." *United States v. Coplen*, 533 F.3d 929, 931 (8th Cir. 2008) (quoting *United States v. Sturdivant*, 513 F.3d 800, 802 (8th Cir. 208)); *accord Theus v. United States*, 611 F.3d 441, 447 (8th Cir. 2010) (quoting *Coplen*, 533 F.3d at 931).

While Rule 33 refers specifically to new trial motions based on "newly discovered evidence," *see* FED. R. CRIM. P. 33(b)(1), it also recognizes that a new trial motion may be based on "other grounds," as well. *See* FED. R. CRIM. P. 33(b)(2). Such grounds include "insufficiency of the evidence." *See Aguilera*, 625 F.3d at 486. The Eighth Circuit Court of Appeals has recognized that, where sufficiency of the evidence is at issue, because the district court has the power to weigh the evidence and disbelieve witnesses, the district court may "'grant a new trial even where there is substantial evidence to sustain the verdict.'" *Id.* (quoting *Campos*, 306 F.3d at 579). Even so, the Eighth Circuit Court of Appeals has also explained that "[m]otions for new trial based on the sufficiency of the evidence are generally disfavored, . . . and '[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand.'" *Id.* at 487 (quoting *Campos*, 306 F.3d at 579).

### 3. *Plain error*

Many of the alleged errors on which the Amayas now rely for post-trial relief from their convictions are matters to which they offered no contemporaneous objection. Thus, these alleged errors are reviewed post-trial only for "plain error."

More specifically, Rule 52(b) of the Federal Rules of Criminal Procedure provides that "[a] plain error *that affects substantial rights* may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b) (emphasis added). The Eighth Circuit Court of Appeals has applied "plain error" review, for example, where the defendant did not object to an instruction or verdict form during trial, but later challenged them in post-trial motions and on appeal. *See United States v. Chappell*, 665 F.3d 1012, 1014 (8th Cir. 2012). Thus, a defendant's conviction may be reversed, and a new trial granted, only "if the district court made an error that (1) is plain; (2) 'affects substantial rights'; and (3) 'seriously affects the fairness, integrity, or

public reputation of judicial proceedings.'" *Id.* (quoting *Johnson*, 520 U.S. at 466–67, in turn quoting *United States v. Olano*, 507 U.S. 725, 732 (1993), with alterations omitted); *and compare United States v. Jean-Guerrier*, 666 F.3d 1087, 1091 (8th Cir. 2012) ("To prove plain error the defendant must show that '(1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights. . . .' [*United States v. White Bull*, 646 F.3d 1082, 1091 (8th Cir. 2011)]. Even if the defendant meets these three requirements of plain error, an appellate court will only reverse if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' [*Puckett v. United States*, 556 U.S. 129, 135 (2009)] (internal quotations and citation omitted)."); *United States v. Marquez*, 605 F.3d 604, 611 (8th Cir. 2010) (considering plain error review of an alleged error in instructions and applying the *Puckett* four-prong analysis). To put it another way, "'Plain-error review [of an error in the instructions or verdict form] permits reversal only if the error "was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice."'" *United States v. Weaver*, 554 F.3d 718, 722 (8th Cir. 2009) (quoting *United States v. Urkevich*, 408 F.3d 1031, 1036 (8th Cir. 2005), in turn quoting *United States v. Griffith*, 301 F.3d 880, 883 (8th Cir. 2002)); *United States v. Spencer*, 592 F.3d 866, 880 (8th Cir. 2010) (reviewing failure to give a curative instruction for plain error, defining error as plain "only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected" (internal quotation marks and citations omitted)); *and compare Coplen*, 533 F.3d at 931 (reiterating, more generally, that a "new trial" requires a showing of a "miscarriage of justice").

An error is "plain" if it is "clear and obvious," that is, "if it is not 'subject to reasonable dispute.'" *Jean-Guerrier*, 666 F.3d at 1091 (quoting *Puckett*, 556 U.S. at 135)). In the specific context alleged here, errors in instructions or a verdict form, the

error was "prejudicial" and, thus, "affected a defendant's substantial rights," if "the error affected the outcome of the district court proceedings." *United States v. Martinson*, 419 F.3d 749, 754 (8th Cir. 2005); *cf United States v. Cook*, 603 F.3d 434, 437-38 (8th Cir. 2010) (considering the effect of the alleged error in the instructions on the outcome of the case). On the other hand, an omission in a verdict form is not "prejudicial" if, considering the instructions and verdict forms in their entirety, the jurors were correctly informed of the standards applicable to their verdict. *See, e.g., United States v. Johnson*, 495 F.3d 951, 977-78 (8th Cir. 2007) (concluding that there was no "plain error" in a verdict form that supposedly required the jury "to either unanimously agree to a death sentence or unanimously agree to a life sentence," where the verdict form did not expressly mention unanimity, but did refer the jurors to jury instructions that correctly stated that unanimity was required for a death sentence, but that the court would impose a life sentence if even one juror found that death was not justified); *see also Cook*, 603 F.3d at 438 (reading allegedly erroneous instructions "in context" and considering the instructions "as a whole" to determine whether any plain error occurred). The lack of any contemporaneous objection by the parties or the court suggests that there was not prejudicial error. *Cook*, 603 F.3d at 438. Other factors that indicate that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings" include the "magnitude of th[e] plain and prejudicial error" and whether the court failed to correct it. *Chappell*, 665 F.3d at 1015; *see also Jones v. United States*, 527 U.S. 373 (1999) (concluding that a district court's "explicit instruction" could overcome any ambiguity or confusion caused by a verdict form).

It strikes me as odd that both the standard for a "new trial" and the standard from relief for a "plain error" should be stated in terms of a "miscarriage of justice." *Compare Weaver*, 554 F.3d at 722 ("Plain-error review [of an error in the verdict form] permits reversal only if the error was so prejudicial as to have affected

substantial rights resulting in a miscarriage of justice." (internal quotation marks and citations omitted)); *with Coplen*, 533 F.3d at 931 (reiterating, more generally, that a "new trial" requires a showing of a "miscarriage of justice"). Surely, if the error is "preserved," the trial court should have more discretion to grant a new trial than if the error was not "preserved," and thus had to be "plain." There may be some hint of a distinction in the comment of the Eighth Circuit Court of Appeals, more than three decades ago, that, when an error in the instructions is reviewed only for "plain error," review is limited "to whether the court's omission of [or error in] the instruction affected the defendant's substantial rights and was '*so completely erroneous* as to result in a miscarriage of justice,' . . . *a standard rarely met.*" *United States v. Phillips*, 522 F.2d 388, 391 (8th Cir. 1975) (emphasis added) (quoting *Kampmeyer v. United States*, 227 F.2d 313, 322 (8th Cir. 1955)); *see also id.* at 393-94 (Heaney, C.J., concurring) (noting that, "[h]ad the error been properly preserved pursuant to Federal Rule of Criminal Procedure 30, a new trial would be required," but "[t]he error does not in this case amount to a miscarriage of justice reversible under the plain error rule"). Similarly, the same court commented, two decades later, that, when a defendant fails to preserve an error in jury instructions, "plain error" review requires that the defendant "meet the *stringent requirements* of [Rule 52(b)] by showing that [the error] amounted to a miscarriage of justice." *United States v. Johnson*, 114 F.3d 808, 814 (8th Cir. 1997) (emphasis added). Thus, while the standard for a "new trial," whether or not the error was "preserved," is "miscarriage of justice," I conclude that, where the error has been preserved, the trial court has more discretion to grant relief, but where the error has not been preserved, the trial court has less discretion and must apply a more stringent standard in its review of the nature and effect of the error to grant relief.

With these standards in mind, I turn to consideration of the Amayas' arguments for post-trial relief from their convictions on the drug conspiracy and money-laundering conspiracy charges in this case.

### B.     Relief From The Drug Conspiracy Conviction

Of the remaining defendants, only Angel was charged with the drug conspiracy offense in **Count 1**.  Angel seeks judgment of acquittal on the drug conspiracy charge on "all of the grounds previously set forth" in his Rule 29 motions during trial and, still more specifically, based on "lack of governmental evidence to prove [he] committed" that offense.  Defendant Angel Amaya's Motion For New Trial And Judgment Of Acquittal And/Or Renewed Motion For Mistrial (docket no. 422) at 1.  Although the entirety of his argument for a new trial seems to focus on the money-laundering conspiracy in **Count 2**, I will nevertheless assume, in an abundance of caution, that Angel also asserts insufficiency of the evidence as a basis for a new trial on the drug conspiracy in **Count 1**.  In addition, Angel reiterates that the prosecution's improper vouching for a witness was proper grounds for a mistrial and that "[t]here would be a miscarriage of justice" in allowing the jury to rely on the evidence for which the prosecutor vouched.  I read this contention to be a request for a new trial on this ground, as well.  *See* FED. R. CRIM. P. 33(a) (a new trial may be granted "if the interest of justice so requires"); *see also Aguilera*, 625 F.3d at 486 (describing the district court's discretion to grant a new trial under Rule 33 as "broad, but limited," because the standard ultimately is "miscarriage of justice").  I will consider in turn the sufficiency of the evidence on the drug conspiracy charge, applying both judgment of acquittal and new trial standards, and whether the prosecution's "vouching" on Angel's conviction on the drug conspiracy charge caused a miscarriage of justice, such that a new trial for Angel is required on this charge.

## 1. Sufficiency of the evidence

### a. Arguments of the parties

Angel reiterates, by reference, his sufficiency of the evidence arguments made on the record at the close of the evidence. Those arguments are that the prosecution presented absolutely no proof that he ever possessed any drugs. Specifically, he points out that the prosecution presented no fingerprint evidence and no laboratory results, no drugs were found on him or seized from him, nor were any items produced in court that had been analyzed and verified to be drugs. He argues that the prosecution presented only a bundle of "green," a "baggie of white powder" found in his shoe in his house, and a "little bundle" found in one of the compartments of his motorcycle, but the contents of those bundles were never tested. He also argues that testimony of cooperating witnesses about drug use and supposed drug transactions and proceeds of drug transactions are not supported by any evidence of actual drugs. He argues that, without some corroboration that drugs were actually possessed, there is no evidence of a conspiracy or agreement to possess drugs with intent to distribute them.

The prosecution argues in its Resistance (docket no. 437) that it was required to prove the elements of a *conspiracy* to possess drugs with intent to distribute them, not the elements of a substantive offense of possession with intent to distribute. The prosecution argues that there is sufficient evidence of the required agreement to support a drug conspiracy conviction, because each cooperating co-conspirator testified about specific occasions on which he or she participated in drug-dealing activity with Angel. The prosecution argues that the evidence also demonstrated Angel's knowledge of and joinder in the agreement, because it showed that, in the vast majority of instances, Angel took a supervisory role in the drug-dealing activities.

### b.    *Analysis*

To prove a conspiracy to possess with intent to distribute illegal drugs in violation of 21 U.S.C. § 846, controlling case law—and the jury instructions in this case—required the prosecution to prove the following elements:  (1) at some time during the period of the conspiracy, in the Northern District of Iowa, two or more persons reached an agreement or understanding to commit one or more of the alleged objectives of the conspiracy; (2) the defendant voluntarily and intentionally joined in the agreement or understanding; and (3) at the time that the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding. *See* 8th Circuit Criminal Model Instruction 5.06A; *United States v. Jackson*, 610 F.3d 1038, 1044 (8th Cir. 2010) ("To convict [a defendant], the Government must prove beyond a reasonable doubt (1) that two or more people reached an agreement to possess the drugs with the intent to distribute; (2) that [the defendant] voluntarily and intentionally joined the agreement; and (3) that at the time [the defendant] joined the agreement, he knew its essential purpose."). Commission of the underlying substantive offense that is the *objective* of the conspiracy is conspicuous by its absence from this list of elements of a drug conspiracy offense.

The Eighth Circuit Court of Appeals has "note[d] that a mere agreement to distribute [or possess with intent to distribute] a controlled substance, even absent some overt act in furtherance of the conspiracy, is sufficient to violate federal drug conspiracy laws." *United States v. Bynum*, 669 F.3d 880, 887 (8th Cir. 2012) (citing *United States v. Shabani*, 513 U.S. 10, 17 (1994)).  Furthermore, even before it was clear that a drug conspiracy did not require proof of an overt act, it was a long-standing principle of conspiracy law that the crime is complete upon the agreement and is not dependent upon the success or failure of the planned illegal activity. *See, e.g., United States v. Littlefield*, 594 F.2d 682, 684 (8th Cir. 1979) ("It is also settled doctrine that

the crime of conspiracy is complete on the agreement to violate the law as implemented by one or more overt acts, however innocent such act standing alone may be, and it is not dependent on the success or failure of the planned scheme."); *accord United States v. Crippen*, 627 F.3d 1056, 1065 (8th Cir. 2010) (stating, in a case involving a charge of conspiracy to tamper with witnesses, "[C]onspiracy is an inchoate offense, which 'is complete on the agreement to violate the law as implemented by one or more overt acts, however innocent such act standing alone may be, and it is not dependent on the success or failure of the planned scheme.'" (quoting *Littlefield*, 594 F.2d at 684)). Since neither an overt act nor success of the conspiracy is required, it follows that commission of the underlying substantive offense simply is not an element of a drug conspiracy offense. *See also United States v. Johnson*, 466 F.2d 1206, 1208 (8th Cir. 1972) (noting that it was already a long-standing principle of conspiracy law that "'the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses'" (quoting *Pinkerton v. United States*, 328 U.S. 640, 643 (1946))).

As to the elements that the prosecution was required to prove, the Eighth Circuit Court of Appeals has explained,

> The Government is not required to prove an express agreement. *United States v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007). Instead, it need only establish a tacit understanding between the alleged co-conspirators, which may be shown through circumstantial evidence. *Id.* Because conspiracies often entail secrecy, the agreement between co-conspirators must frequently be established through "inference[s] from the surrounding circumstances." *Id.* (quoting *United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997)). Nevertheless, the Government must "offer enough evidence to prove a defendant's connection to a conspiracy beyond a reasonable doubt." *United States v. Lopez*, 443 F.3d 1026, 1028 (8th Cir. 2006) (en banc).

*Jackson*, 610 F.3d at 1044. Furthermore, a defendant's attack on each piece of evidence individually as insufficient to prove a conspiracy misses the point, because the court "must consider the entirety of the evidence to determine if it was sufficient to uphold the conviction[]." *Id.*

In *United States v. Carr*, 560 F.3d 849 (8th Cir. 2009), the defendant charged with a conspiracy to possess with intent to distribute drugs focused his challenge to the sufficiency of the evidence, as Angel does here, on the insufficiency of the evidence of the uncharged underlying substantive offense as demonstrating that he was not a knowing member of the conspiracy. 560 F.3d at 852. However, in *Carr*, the Eighth Circuit Court of Appeals held that there was sufficient evidence to find the defendant guilty of the charged conspiracy offense, arising from his actions in carrying a package containing drugs from the barbershop where his brother had sent it to the trunk of his mother's car, "combined with an array of surrounding circumstantial evidence"— including his arrival at the barbershop shortly after the package was delivered, suggesting that he was there to pick it up; evidence casting doubt on his explanation of his presence because his son needed a haircut; his flight when someone yelled "police"; giving a fictitious name when arrested; and using a false identification card like other conspirators—to raise an inference of knowing participation well beyond "mere presence." *Id.* at 853. Similarly, while a mere "buyer/seller" relationship may not be enough to establish a conspiracy, the question is whether the evidence shows more than that. *See Jackson*, 610 F.3d at 1044.

I conclude that, viewing the evidence in the light most favorable to the government, Angel has not shown that a reasonably minded jury must have had a reasonable doubt as to the existence of any of the essential elements of the drug conspiracy charged against him; therefore, he is not entitled to judgment of acquittal on this charge. *See Baker*, 367 F.3d at 797. Even viewing the evidence with a more

jaundiced eye than the jurors were likely to give it—that is, reweighing the evidence and the credibility of the witnesses—I do not find any miscarriage of justice in the jurors' guilty verdict on this charge against Angel that would warrant a new trial. *See Coplen*, 533 F.3d at 931.

More specifically, Angel attacks the verdict on this charge on the basis of the absence of forensic evidence that he actually possessed any drugs, which he argues demonstrates the lack of any illegal agreement. That attack, however, misses the point, because I "must consider the entirety of the evidence to determine if it was sufficient to uphold the conviction[]." *Jackson*, 610 F.3d at 1044. Despite the lack of forensic evidence of actual possession of any drugs by Angel, there was nevertheless "an array of surrounding circumstantial evidence" demonstrating his participation in an agreement to possess drugs with intent to distribute them, *see Carr*, 560 F.3d at 853; *accord Jackson*, 610 F.3d at 1044 (noting that circumstantial evidence of a tacit understanding between alleged co-conspirators may be sufficient to prove a conspiracy charge), as well as testimony of participants in the conspiracy about Angel's role in it. As the prosecution argues, each cooperating co-conspirator testified about specific occasions on which he or she participated in drug-dealing activity with Angel, and their testimony suggested that, in the vast majority of instances, Angel took a supervisory role in the drug-dealing activities. The testimony of cooperators was corroborated by circumstantial evidence of phone records, drug pay/owe sheets; a recorded conversation between co-conspirator DeAnda and Angel discussing a drug transaction that they were contemplating; transfers of funds in payment for drugs corroborated by other recorded calls, texts, and bank records; and interception of a shipment of marijuana also corroborated by recorded calls discussing the shipment in which Angel provided the tracking number for the shipment to another cooperator. Thus, this evidence demonstrated much more than Angel's participation in a single transaction, as in *Carr*,

560 F.3d at 852, and demonstrated more than a mere buyer/seller relationship between Angel and the various co-conspirators. *See Jackson*, 610 F.3d at 1044. This evidence was more than sufficient, under either a "judgment of acquittal" standard or a "new trial" standard, to prove the existence of an illegal agreement to possess drugs with intent to distribute them; Angel's voluntary joinder in that illegal agreement; and his knowledge of and knowing participation in the goals of the illegal agreement. *See id.* (stating the elements of a drug conspiracy offense).

That part of Angel's post-trial motion seeking either a judgment of acquittal or a new trial on the drug conspiracy charge in **Count 1** based on insufficiency of the evidence is denied.

### 2.    *The effect of improper vouching*

Angel also reiterates that the prosecution's improper vouching for a witness was proper grounds for a mistrial and that "[t]here would be a miscarriage of justice" in allowing the jury to rely on the evidence for which the prosecutor vouched. I read this contention to be a request for a new trial on **Count 1** on this ground, because the witness for whom the prosecutor vouched had provided evidence about Angel's drug-dealing activity.

### a.    *Arguments of the parties*

Angel argues that vouching for a witness is a serious matter, but in a case where the prosecution vouches for a cooperator, it throws the support of the United States Government behind the word of a person seeking a reward from the Government. He argues that there would be a miscarriage of justice in allowing the prosecution to vouch for one of its cooperating witnesses and then allowing the jury to adopt that testimony as being valid and verified by the United States Government.

In its brief, the prosecution argues that, conceding that the prosecutor's" comment was improper "vouching," Angel must also show that the comment had a

prejudicial effect on him to demonstrate reversible error. Here, the prosecution argues that there is no sufficient showing of any prejudicial effect to warrant a new trial, because the comment did not create a cumulative effect, where it was a single comment (indeed, a single word) in a four-day trial and that comment was not sufficiently egregious even to raise a contemporaneous objection from either defendant. The prosecution also argues that the strength of properly admitted evidence is overwhelming, and that the court gave an adequate curative instruction.

At oral arguments on the Amayas' post-trial motions, the prosecution backpedaled from its position in its brief that it had improperly "vouched" for the witness's truthfulness. Instead, the prosecution asserted that the single comment, "Exactly," after the witness's statement that he had testified truthfully, was only "argumentative," although the prosecution concedes that it was improper on that ground.

### b. Analysis

Where allegedly improper vouching occurs without timely objection by the defendant, as it did here, review is for "plain error." *See United States v. McClellon*, 578 F.3d 846, 859 (8th Cir. 2009) (citing *United States v. Tulk*, 171 F.3d 596, 599 (8th Cir. 1999)). In these circumstances, as in other circumstances,

> "[The defendant] must therefore show that the error was plain, meaning clear or obvious; and that the error affected his substantial rights, which requires a showing that the error was prejudicial and affected the trial's outcome." [*Tulk*, 171 F.3d at 599] (internal quotations, alterations, and citation omitted).

*McClellon*, 578 F.3d at 859; *United States v. Williams*, 97 F.3d 240, 245-46 (8th Cir. 1996) (considering offensiveness of the comment and whether or not it was so offensive as to prevent a fair trial); *and compare Chappell*, 665 F.3d at 1014 (applying the same

standards to "plain error" review in other contexts); *Jean-Guerrier*, 666 F.3d at 1091 (same).

As to the "error" prong of the analysis, the prosecution conceded—at least in its briefing—that the prosecutor's statement, "Exactly," after a cooperating witness stated that he had testified truthfully about the defendants' drug activities, was improper "vouching." At the oral arguments, however, the prosecution revised its position by asserting that the prosecutor had not "vouched" for the witness, but had simply made an "argumentative" statement, although the prosecution conceded that an "argumentative" statement was also improper. I find the prosecution's attempt to recharacterize the comment as "argumentative" to be a disappointing and disingenuous attempt to minimize the error—and ultimately unpersuasive. Notwithstanding counsel's attempts to explain, I am at a loss to understand in what sense the comment was "argumentative." Instead, I find that the prosecutor's comment was, indeed, "improper vouching."

As the Eighth Circuit Court of Appeals has explained, "'Attempts to bolster a witness by vouching for his credibility are normally improper.'" *McClellon*, 578 F.3d at 859 (quoting *United States v. Jackson*, 915 F.2d 359, 361 (8th Cir. 1990)). More specifically,

> "Improper vouching may occur when the government: (1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness." *United States v. Benitez-Meraz*, 161 F.3d 1163, 1167 (8th Cir. 1998).

*McClellon*, 578 F.3d at 858. I find that improper vouching of the second, third, or both kinds occurred here. The prosecutor's comment seems to me to "'impl[y] a guarantee of truthfulness,'" *i.e.*, that the witness's statement was exactly true, as well

as to express the prosecutor's "'personal opinion about the credibility of a witness,'" *i.e.*, that, in the prosecutor's opinion, the witness's assertion that he had testified truthfully was exactly right. *Id.* (quoting *Benitez-Meraz*, 161 F.3d at 1167). More importantly, I find that such "vouching" was "plain error," because the error was "clear and obvious," that is, it was "not subject to reasonable dispute." *Jean-Guerrier*, 666 F.3d at 1091 (internal quotation marks and citations omitted). Thus, I pass on to the question of whether or not the "vouching" was prejudicial. *See McClellon*, 578 F.3d at 859.

The Eighth Circuit Court of Appeals has also explained,

> "Even clear errors will only matter if a miscarriage of justice would otherwise result that might seriously affect the fairness, integrity or public reputation of the judicial proceedings." [*Benitez-Meraz*, 161 F.3d at 1167]. "Reversal for prosecutorial misconduct is not required unless it prejudicially affected an individual's substantial rights and deprived him of a fair trial." *Id*. "Factors to consider in assessing prejudice include the cumulative effect of any misconduct, the strength of the properly admitted evidence, and any curative actions taken by the trial court." *Id*.

*McClellon*, 578 F.3d at 859. A single expression of personal belief by a prosecutor may not be prejudicial. *United States v. Eldridge*, 984 F.2d 943, 947 (8th Cir. 1993). I cannot find that the single, one-word comment here, without other prosecutorial misconduct to consider for cumulative effect, was prejudicial, where it was a fleeting comment—so fleeting, in fact, that neither of the defense attorneys apparently caught it at the time—early in a four-day trial. *See McClellon*, 578 F.3d at 859 (considering the cumulative effect of any misconduct). Also, as recounted above, the evidence of Angel's guilt on the drug conspiracy charge was, if not overwhelming, certainly strong enough to outweigh any possible prejudicial effect of a fleeting improper comment

about the testimony of only one of several cooperating witnesses. *See id.* (considering prejudice of a prosecutor's improper comment in light of the strength of the properly admitted evidence against the defendant).

Another factor in the "prejudice" analysis is whether and what curative actions the court took. *Id.* The Eighth Circuit Court of Appeals has recognized that a proper cautionary instruction will mitigate any prejudice suffered as a result of prosecutorial "vouching." *See Williams*, 97 F.3d at 246 (citing *Eldridge*, 984 F.2d at 947). Ideally, such a cautionary instruction should be given to the jury immediately after the misconduct occurred. *See United States v. Dougherty*, 810 F.2d 763, 768 (8th Cir. 1987). Here, the comment occurred near the end of one trial day, and the curative instruction was given before any evidence the next morning. Even when given later, the question is whether the curative instruction alleviates the possible prejudice. *Id.* The Eighth Circuit Court of Appeals has concluded that a curative instruction that adequately identified the improper comment and instructed the jury to disregard it was sufficient to mitigate prejudice. *Id.* (finding adequate a curative instruction for a prosecutor's improper comment that one defendant had been convicted of a felony by instructing the jury as follows: "During his opening statement on Monday, the government counsel said Artie Kehm had been convicted of a felony. There is no evidence that Artie Kehm had been convicted of a felony and you must disregard entirely the statement that he has been.").

Here, the curative instruction that I gave, which is set forth in full above, on page 11, identified the improper comment as something that the prosecutor said at the end of a witness's testimony that was "vouching" for the credibility of the witness; defined "vouching" in a "plain language" way; instructed the jurors that the prosecutor's comment was "impermissible" and "should not have happened"; made clear to the jurors that they were "the sole judges of the credibility of the witnesses,"

that the opinions of the judge and lawyers were "not important"; and specifically informed the jurors that "to the extent that a lawyer would either intentionally or unintentionally say something that would imply that they think the witness is telling the truth, you have to completely disregard that." I believe that such an instruction fully alleviated or mitigated the prejudicial effect of the improper comment in the totality of the circumstances of this case. *Cf. id.*

Even if I accepted that this alleged error was not subject to "plain error" review—if Angel's overnight motion for mistrial could be construed as a timely objection to the "vouching" incident and if his apparent agreement to the curative instruction was not intended to be a waiver of his contention that the "vouching" incident warranted a mistrial—I would still conclude that Angel is not entitled to relief on this ground. Although I concluded, above, in Section II.A.3., that, where the error has been preserved, the trial court has more discretion to grant a new trial, I do not find that application of a more generous "miscarriage of justice" standard warrants a new trial on the basis of a "preserved" error, either. *See Coplen*, 533 F.3d at 931. In the context of a "preserved" error that the prosecution improperly vouched for a witness, the Eighth Circuit Court of Appeals has, again, required the defendant to "establish that: 1) the statements were in fact offensive; and 2) that the remarks were so offensive so as to prevent a fair trial." *Williams*, 97 F.3d at 245. I reiterate my conclusion that the prosecutor's statement, "Exactly," after a witness reiterated that he had told the truth about the Amayas' drug dealing activities, was offensive "vouching." *Id.* However, even applying a less stringent standard, I cannot find that the statement was sufficiently prejudicial that it "prevent[ed] a fair trial," that is, that it "prejudicially affected [the defendants'] substantive rights.'" *Id.* at 245-46 (quoting *United States v. Skarda*, 845 F.2d 1508, 1511 (8th Cir. 1988)). Again, there was "considerable" evidence of Angel's guilt on the drug conspiracy that more than outweighed a fleeting

improper comment, and I gave a curative instruction cautioning the jurors that they were the sole judges of credibility and that they were not to consider the prosecutor's (or my) comments in doing so. *Cf. id.* at 246.

Angel is not entitled to a new trial on the drug conspiracy charge against him in **Count 1** on the basis of the prosecutor's improper "vouching" for a witness, either.

### 3. Summary

Because I have rejected both of Angel's grounds for relief from his conviction of the drug conspiracy offense charged in **Count 1**, that part of Angel's June 11, 2012, Motion For New Trial And Judgment Of Acquittal And/Or Renewed Motion For Mistrial (docket no. 422) seeking a judgment of acquittal or a new trial on that charge is denied.

## C. Relief From The Money-Laundering Conviction

Angel and Javier were both convicted of the money-laundering conspiracy charged in **Count 2**. Both seek judgments of acquittal and new trials on that charge, on several, often overlapping grounds. Therefore, rather than consider separately each defendant's arguments for relief, I will consider in turn the issues raised in their post-trial motions concerning this charge.

### 1. The elements of the offense

The defendants contend that they are entitled to judgments of acquittal or new trials on the money-laundering conspiracy charge, because the prosecution was required to prove the elements of a substantive money-laundering offense in addition to the elements of a conspiracy, but did not do so. They argue that the prosecution was also required to prove that they knew that the objectives of the money-laundering conspiracy were illegal, but did not do so. The prosecution disputes both of these contentions.

### a. *Proof of a substantive money-laundering offense*

### i. *Arguments of the parties*

Javier argues that, to prove a conspiracy to commit money laundering under 18 U.S.C. § 1956, the prosecution has the burden to prove beyond a reasonable doubt not only the elements of a conspiracy, but the elements of one or more of the money-laundering objectives. Javier argues that, owing to the complexity of the relevant law, which he argues differs from other conspiracy law in this respect, this case should be "resubmitted for consideration of the trier of law rather than the trier of fact." Angel adopts these arguments in his post-trial motion. He adds that the jury instructions were confusing, not only to the jury, but even to the lawyers, in trying to describe the elements and how a money-laundering conspiracy works.

The prosecution argues that the law does not support the defendants' assertion that the prosecution was required to prove both the elements of a conspiracy and the elements of at least one substantive money-laundering offense to convict the defendants. The prosecution argues that there is no language in the Eighth Circuit cases that the defendants cite to support their argument that a defendant charged with conspiracy to commit money-laundering under 18 U.S.C. § 1956(h) must violate a substantive money-laundering provision. Rather, those cases show that what is required is an *agreement* to commit substantive money-laundering offenses. The prosecution points out that the United States Supreme Court has explicitly held that a conviction for conspiracy to commit money laundering in violation of § 1956(h) does not require proof of an overt act in furtherance of the conspiracy. Thus, the prosecution argues that a § 1956(h) conspiracy charge is entirely separate from a substantive money-laundering offense.

*ii.* **Analysis**

Put most simply, "'Conspiring to launder money [in violation of 18 U.S.C. § 1956(h)]. . . requires that the defendant '*agreed* with another person to violate the substantive provisions of the money-laundering statute.'" *United States v. Diaz-Pellegaud*, 666 F.3d 492, 498 (8th Cir. 2012) (emphasis added) (quoting *United States v. Heid*, 651 F.3d 850, 854 (8th Cir. 2011), in turn quoting *United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006)); *United States v. Slagg*, 651 F.3d 832, 844 (8th Cir. 2011) ("Conspiring to launder money in violation of 18 U.S.C. § 1956(h) requires that the defendant "*agreed* with another person to violate the substantive provisions of the money-laundering statute. . . .'" (emphasis added) (quoting *United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006), and also citing *United States v. Pizano*, 421 F.3d 707, 725 (8th Cir. 2005)). Thus, applicable law—and the jury instructions in this case—required proof of the following elements to establish a money-laundering conspiracy offense: (1) at some time during the period of the conspiracy, in the Northern District of Iowa, two or more persons reached an agreement or understanding to commit one or more of the alleged objectives of the conspiracy; (2) the defendant voluntarily and intentionally joined in the agreement or understanding; and (3) at the time that the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding. [4] *United States v. Jarrett*, 684 F.3d 800, 802 (8th Cir. 2012) (approving the statement in jury instructions of the "three essential elements" of a conspiracy to launder money as "(1) 'an agreement . . . to launder money'; (2) the defendant's voluntary joinder of the agreement; and (3) the defendant's knowing joinder of the agreement"); *accord United States v. Prince*, 618 F.3d 551,

---

[4] The jury instructions in this case included a "combined" instruction on elements of a conspiracy offense, which distinguished between the drug conspiracy and the money-laundering conspiracy on the basis of the objectives of each conspiracy. *See* Instruction No. 5.

553-54 (6th Cir. 2010) ("To establish a money laundering conspiracy, the government must prove (1) that two or more persons conspired to commit the crime of money laundering, and (2) that the defendant knowingly and [(3)] voluntarily joined the conspiracy."); *United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010) ("To obtain a conviction for money laundering conspiracy under 18 U.S.C. § 1956(h), the Government must prove the following essential elements: (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C § 1956(a) or § 1957; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy."); *United States v. Greenridge*, 495 F.3d 85, 100 (3d Cir. 2007) (stating that, to prove a conspiracy under § 1956(h), the prosecution was required to prove "(1) that an agreement was formed between two or more persons; and (2) that the defendant knowingly became a member of the conspiracy."); *United States v. Fuchs,* 467 F.3d 889, 906 (5th Cir. 2006) (defining the elements of a money-laundering conspiracy as "(1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement [(3)] knowing its purpose and with the intent to further the illegal purpose."); *United States v. Johnson*, 440 F.3d 1286, 1394 (11th Cir. 2006) ("To obtain a conviction for a promotional money laundering conspiracy, the conviction presently at issue, the government bears the burden of proving beyond a reasonable doubt that: (1) two or more persons agreed to commit a crime, in this case a § 1956(a)(1)(A)(i) promotional money laundering violation; and (2) that Johnson, knowing the unlawful plan, [(3)] voluntarily joined the conspiracy." (citing *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005)); *and compare United States v. Keck*, 643 F.3d 789, 794 (10th Cir. 2011) ("The elements of a money-laundering conspiracy require the government to prove: (1) an

agreement with another person to knowingly conduct a financial transaction involving the proceeds of specified unlawful activity, with the intent to further specified unlawful activity, in violation of 18 U.S.C. § 1956; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged conspirators."). As with a drug conspiracy, the commission of the underlying substantive offense that is the *objective* of the conspiracy is conspicuous by its absence from this list of elements of a money-laundering conspiracy offense.

Also as with a drug conspiracy, proof of an overt act is not required to prove a money-laundering conspiracy in violation of § 1956(h). *See United States v. Huber*, 404 F.3d 1047, 1056 (8th Cir. 2005) ("Section 1956(h) does not require any such [overt] act be charged or proven." (citing *Whitfield v. United States*, 543 U.S. 209 (2005)));[5] *accord United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011) (also citing *Whitfield*); *Prince*, 618 F.3d at 553-54 (Sixth Circuit case also citing *Whitfield*); *Green*, 599 F.3d at 372 (Fourth Circuit case also citing *Whitfield*); *United States v. Garcia*, 587 F.3d 509, 515 n.3 (2d Cir. 2009) (recognizing that *Whitfield* overruled Second Circuit precedent on this issue); *United States v. Griggs*, 569 F.3d 341, 344 (7th Cir. 2009) (also citing *Whitfield*); *Fuchs*, 467 F.3d at 906 (Fifth Circuit case so holding also citing *Whitfield*).

---

[5] The Eighth Circuit Court of Appeals has not consistently recognized the impact of the Supreme Court's decision in *Whitfield*. For example, just weeks ago, in a case that fails to cite *Whitfield*, the Eighth Circuit Court of Appeals stated, "'A conspiracy conviction requires proof that the defendant knowingly joined a conspiracy to launder money and that one of the conspirators committed an overt act in furtherance of that conspiracy.'" *Jarrett*, 684 F.3d at 802 (quoting *United States v. Delgado*, 653 F.3d 729, 737 (8th Cir. 2011), and also *United States v. Evans*, 272 F.3d 1069, 1082 (8th Cir. 2001)).

Even more decisive here is the very recent rejection by the Eighth Circuit Court of Appeals of a defendant's argument that she could not be convicted of a money-laundering conspiracy, because the prosecution did not claim that she committed money laundering, the prosecution's expert witness did not claim that she had engaged in money laundering, and the prosecution's main fact witnesses did not claim that she had committed money laundering. *Jarrett*, 684 F.3d at 802. The Eighth Circuit Court of Appeals made clear that a defendant "did not have to commit money laundering to be found guilty as a coconspirator." *Id.*; *accord United States v. Maragh*, 456 Fed. Appx. 181, 183 (3d Cir. 2012) (unpublished op.) (holding that a money-laundering conspiracy and a substantive money-laundering offense are separate offenses, because "[t]he substantive money laundering charge requires that the defendant succeed in committing the offense, but this is not required with the conspiracy charge, which is an inchoate offense."); *United States v. Mainieri*, 691 F. Supp. 1394, 1397 (S.D. Fla. 1988) ("[I]n modern criminal law the distinctiveness between a substantive offense [such] as money laundering and a conspiracy to commit money laundering is a postulate of law. 'It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses.'" (quoting *Pinkerton*, 328 U.S. at 643)).

Thus, as is the case with a drug conspiracy, neither an overt act, nor success of the conspiracy, nor commission of an underlying substantive offense is an element of a money-laundering conspiracy offense. Indeed, the Amayas' argument would turn a substantive money-laundering offense into a "lesser-included offense" of a money-laundering conspiracy offense, but I can find no authority for such a relationship between the conspiracy and substantive offenses. *See United States v. Payne*, 962 F.2d 1228, 1235 (6th Cir. 1992) ("[A]cquittal of the substantive [money-laundering] offense

does not constitute a determination that no overt act was committed, nor preclude a conviction on the [money-laundering] conspiracy count.").

The Amayas nevertheless argue that, in *Diaz-Pellegaud*, the Eighth Circuit Court of Appeals *held* that a conviction under 18 U.S.C. § 1956(h) requires violation of the substantive provisions of the money-laundering statute. I do not agree. First, as indicated above, the court in *Diaz-Pellegaud* stated that a conviction for a money-laundering conspiracy requires proof of an *agreement* to commit a money-laundering offense. 666 F.3d at 498. Second, *Diaz-Pellegaud* did not *hold* that proof of a substantive money-laundering offense is required to prove a money-laundering conspiracy. It is true that the defendant in *Diaz-Pellegaud* argued "that the Government did not introduce any evidence connecting him to any financial transactions and that all the Government showed was that he read 'a series of numbers which correlated to Wells Fargo back accounts' over the phone to a co-conspirator, Dario Verdugo-Galaviz," and it is also true that the court found sufficient evidence to support his involvement in money-laundering offenses. *See id.* Nevertheless, it does not follow that proof of a substantive money-laundering offense is required to prove a money-laundering conspiracy.

More specifically, in *Diaz-Pellegaud*, the court rejected the defendant's argument that the evidence was insufficient to convict him of the money-laundering conspiracy offense, as follows:

> Verdugo–Galaviz testified that both he and a fellow drug dealer named Carlos Clemente "Camargo" Perez–Pantaleon had deposited money from their Sioux Falls drug distribution operation into bank accounts designated by Diaz–Pellegaud in order to pay him for drugs. As the payments continued, drugs continued to arrive in Sioux Falls. Evidence from other cooperating witnesses established that money from the accounts was later withdrawn in Phoenix. The jury was entitled to credit such

testimony. *See United States v. Boyce*, 564 F.3d 911, 916 (8th Cir. 2009) (holding that a fact-finder's determination as to the credibility of a witness is virtually unreviewable on appeal).

Viewing all the evidence in the light most favorable to the Government and accepting all reasonable inferences, *Yarrington*, 634 F.3d at 449, *a reasonable jury could find that Diaz–Pellegaud agreed with Verdugo–Galaviz and Camargo that they would deposit the proceeds from their drug sales into his bank accounts to pay Diaz–Pellegaud for the drugs he was supplying and to ensure their continued supply of drugs.* Given that their deposits would be violations of § 1956(a)(1)(A)(i), *Johnson*, 619 F.3d at 919–20, *this agreement would be sufficient to support the conviction of Diaz–Pellegaud for conspiracy under § 1956(h)*. Therefore, we affirm this conviction.

*Diaz-Pellegaud*, 666 F.3d at 498-99 (emphasis added). Thus, in my view, the Amayas read this case "backwards," when they argue that it shows that proof of a substantive money-laundering violation is required to prove a money-laundering conspiracy; the case actually stands for the proposition that evidence of actual participation in money-laundering offenses is evidence from which the *agreement* that is the basis for a money-laundering conspiracy charge can be inferred.

*Slagg*, on which the Amayas also rely, also does not support their contention. In *Slagg*, the defendant contended that there was insufficient evidence to prove a conspiracy to launder money, in which "[t]he charged object of the conspiracy . . . was violation of the transaction provisions of the money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i)," specifically, conducting a financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. 651 F.3d at 844. He argued that this was so, because there was insufficient evidence to prove two of the four elements of the substantive "concealment" money-

laundering offense: (1) that the financial transaction involved proceeds of illegal activity, and (2) that the transaction was conducted knowing that it was designed to disguise or conceal the funds as proceeds of unlawful activity. *Id.* The court rejected these arguments.

The court rejected the argument as to the first challenged element, because the court found sufficient evidence, including recorded telephone conversations, evidence of the defendant's drug-dealing activities, and his lack of any legitimate employment as a source of funds, from which a reasonable jury could have concluded that the conspirators recognized that the money they were attempting to raise to pay the defendant's bail would be seized as drug proceeds. *Id.* The court also found that a reasonable jury could have found that the money used to post the defendant's bail was derived, at least in part, from proceeds of unlawful drug activity. *Id.* at 845. The court also rejected the defendant's challenge to the evidence of the second element of the substantive offense, that he knew that the bail-posting transaction was designed to conceal or disguise the source and ownership of the funds. The defendant argued that the evidence permitted a reasonable finding only that the sole purpose of the agreement among the alleged conspirators was to bail him out of jail. *Id.* The court cited evidence, however, from which it concluded that a jury could reasonably infer that the defendant knew that the transaction was intended, at least in part, to conceal the money's listed attributes. *Id.*

It is true that the defendant in *Slagg*, like the defendant in *Diaz-Pellegaud*, contended that the evidence was insufficient to prove elements of the substantive money-laundering offense. It is also true that the court rejected those arguments, because there was sufficient evidence to prove the challenged elements of the substantive money-laundering offense. Nevertheless, the court in *Slagg* distinguished between what was required to prove a *conspiracy* to launder money in violation of

§ 1956(h), which the court identified as proof that the defendant "agreed with another person to violate the substantive provisions of the money-laundering statute," and "[t]he charged objective of the conspiracy," a substantive "concealment" money-laundering offense. 651 F.3d at 844 (internal quotation marks and citations omitted). The court never stated that proof of a substantive money-laundering offense was required to prove a money-laundering conspiracy. Thus, ultimately, I cannot read *Slagg* to stand for any different proposition than *Diaz-Pellegaud*, that is, that evidence of actual participation in money-laundering offenses is evidence from which the *agreement* that is the basis for a money-laundering conspiracy charge can be inferred.[6]

---

[6] The case that the Amayas cite that, at least at first blush, most strongly supports their contention that the prosecution must prove *both* the elements of a conspiracy and the elements of a substantive money-laundering offense is the out-of-circuit decision in *United States v. Malone*, 484 F.3d 916 (7th Cir. 2007). In *Malone*, the Seventh Circuit Court of Appeals stated,

> The government charged Malone under 18 U.S.C. § 1956(h) with conspiracy to launder money, which requires establishing that he was knowingly involved with two or more people for the purpose of money laundering, *United States v. Gracia*, 272 F.3d 866, 873 (7th Cir. 2001), and that he "1) conducted a financial transaction with the proceeds of an illegal activity; 2) knew that the property represented illegal proceeds; and 3) conducted the transaction with the intent to promote the carrying on of the unlawful activity." *United States v. Febus*, 218 F.3d 784, 789 (7th Cir. 2000); *see also* 18 U.S.C. § 1956(a)(1)(A)(i).

*Malone*, 484 F.3d at 920. While this statement seems to require proof of *both* the knowing involvement of the defendant in an illegal agreement *and* the elements of a "promotion" (§ 1956(a)(1)(A)(i)) objective, the cases on which *Malone* relies certainly do not. Specifically, in *Garcia*, the court held that the question to determine the sufficiency of the evidence to support a money-laundering conspiracy was "whether the government presented sufficient evidence to demonstrate that Garcia was knowingly involved with two or more people for the purpose of money laundering and that he

I conclude that proof of the commission of a substantive money-laundering offense is *not* an element of a money-laundering conspiracy offense.

### b.     The "knowledge" element

Next, the Amayas argue that the "knowledge" element of a money-laundering conspiracy offense requires proof that the defendant knew that the objectives of the conspiracy were illegal.  The prosecution also disputes this contention.

### i.     Arguments of the parties

Javier argues that all three of the alleged objectives of the money-laundering conspiracy required proof that the defendant was aware of illegality.  Therefore, he argues that one cannot agree to commit any of those three alleged objectives without necessarily knowing that each objective is illegal.  Javier also argues that the failure to include knowledge of the illegality of a substantive money-laundering offense as an element of the money-laundering conspiracy offense contradicted **Count 2** of the Superseding Indictment, which alleged that Javier knew that the transactions that the conspirators agreed to commit involved proceeds of some form of unlawful activity.

---

knew the proceeds used to further the scheme were derived from an illegal activity." 272 F.3d at 873.  As explained, below, this is in accord with the "knowledge" requirement for the money-laundering conspiracy under the jury instructions and applicable in this case, but it clearly does not require proof of the substantive money-laundering offense.  Similarly, the cited portion of *Febus* actually addresses the elements of a substantive § 1956(a)(1)(A)(i) money-laundering offense, not the elements of a § 1956(h) money-laundering conspiracy.  218 F.3d at 784.  Moreover, the court in *Malone* overturned the defendant's money-laundering conspiracy conviction, where the objective of the conspiracy was promotion of the underlying illegal activity, because of a peculiarity of Seventh Circuit law, which holds that use of gross income of the operation to pay expenses of the operation is not "promotion" within the meaning of § 1956(a)(1)(A)(i).  *Malone*, 484 F.3d at 921-22.  Thus, *Malone* can be read to hold that the defendant lacked the necessary intent or agreement to commit the money-laundering objective charged in the indictment.

He asks, how can a defendant be charged with having knowledge, then convicted without needing to prove knowledge? He answers his own question that he cannot. Angel adopts these arguments in his post-trial motion.

The prosecution argues that there is simply no authority for the proposition that, to convict a defendant of a money-laundering conspiracy, the prosecution must prove that the defendant knew that the objectives of the conspiracy were illegal. The prosecution argues that it was required to prove only that the defendant knew that the agreement involved the proceeds of some form of unlawful activity (not necessarily drug activity), not that any substantive money-laundering offense or a money-laundering conspiracy offense was illegal.

### ii.    Analysis

The first answer to the Amayas' argument concerning the "knowledge" element of a money-laundering conspiracy is that they have not cited any case holding that there is such an element, none of the cases stating the elements of a money-laundering conspiracy cited above require such knowledge, and I have not found any other cases that do. Rather, the "knowledge" element of a money-laundering conspiracy requires proof that the defendant knew the purpose of the illegal agreement. *See, e.g., Fuchs,* 467 F.3d at 906.

There is a second ground for rejecting their argument. The Amayas are correct that each alleged objective of the money-laundering conspiracy in this case requires proof that the money launderer knew that the funds or property involved represented proceeds of some form of illegal activity, *see, e.g.,* 18 U.S.C. § 1956(a)(1) (prefacing the definition of all § 1956(a)(1) offenses with the requirement that the defendant "know[] that the property involved in a financial transaction represents the proceeds of some form of unlawful activity"); *Diaz-Pellegaud,* 666 F.3d at 498 (including such an element among the elements of a § 1956(a)(1)(A)(i) "promotion" substantive money-

laundering offense); *Heid*, 651 F.3d at 855 (including such an element among the elements of a § 1956(a)(1)(B)(i) "concealment" substantive money-laundering offense); *United States v. Hill*, 167 F.3d 1055, 1070 n.9 (6th Cir. 1999) (including such an element among the elements of a § 1956(a)(1)(B)(ii) "structuring" or "avoidance of reporting requirements" offense (citing *United States v. Morales*, 108 F.3d 1213, 1221 (10th Cir. 1997))).[7] The Amayas are also correct that such knowledge is necessarily required to prove that a conspirator knew the purpose of a money-laundering conspiracy. *See, e.g, Green*, 599 F.3d at 371 (expressly stating the elements of a money-laundering conspiracy as including "that the defendant knew that the money laundering proceeds had been derived from an illegal activity"); 18 U.S.C. § 1956(a) (requiring knowledge that the transaction involves the proceeds of some form of illegal activity as a prerequisite to each substantive money-laundering offense); *see id.* at § 1956(h) ("Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."). Where the Amayas go astray is that they improperly equate knowledge that the funds involved in a transaction that the conspirators have agreed to commit are proceeds of some form of illegal activity with knowledge that a substantive money-laundering offense violates the law. *See, e.g., United States v. Zhangi*, 189 F.3d 71, 77-78 (1st Cir. 1999) (concluding that "[s]ection 1956 does not require that a defendant know his conduct is a violation of the [substantive] laws, except to the extent that [the substantive law] contains a scienter requirement," in a case involving laundering of money that was proceeds of a violation of tax laws).

---

[7] The Eighth Circuit Court of Appeals has recognized that a "structuring" substantive money-laundering offense in violation of § 1956(a)(1)(B)(ii) also requires proof of knowledge that the law requires reporting of certain transactions. *United States v. Bowman*, 235 F.3d 1113, 1118 (8th Cir. 2000).

Thus, while the prosecution was required to prove that a defendant charged with a money-laundering conspiracy knew that the illegal agreement was to engage in conduct that involved the proceeds of illegal activity, the prosecution was not required to prove that the defendant knew that either the agreement itself was illegal or that the conduct that the conspirators agreed to engage in was illegal. Again, *Diaz-Pellegaud* and *Slagg* are not to the contrary, because each required only proof that the defendant knew that the objectives of the money-laundering conspiracy involved proceeds of some form of unlawful activity. *See Diaz-Pellegaud*, 666 F.3d at 498-99; *Slagg*, 651 F.3d at 844-46. The other, out-of-circuit authorities on which the Amayas rely in support of their "knowledge of illegality" argument likewise require nothing more than knowledge that the proceeds involved in the transaction that the conspirators agreed to commit were proceeds of illegal activity, not that the conspirators had to know that either their agreement or the objectives of the conspiracy were illegal. *See Malone*, 484 F.3d at 920-21; *United States v. Turner*, 400 F.3d 491 (7th Cir. 2005); *United States v. Cassano*, 372 F.3d 868 (7th Cir. 2004); *United States v. Morales-Rodriguez*, 467 F.3d 1 (1st Cir. 2006); *United States v. Corchado-Peralto*, 318 F.3d 255 (1st Cir. 2003).

The Amayas nevertheless argue that **Count 2** of the Superseding Indictment, which charged the money-laundering conspiracy offense, charged that they knew that the objectives of the conspiracy were illegal, but the jury instructions did not require proof of such knowledge to convict them. This argument is equally unavailing, because **Count 2** actually charges that the defendants knowingly conspired to commit money-laundering transactions that involved proceeds of specified unlawful activity and that they knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity. It does not allege that the defendants knew that either conspiring to commit such transactions or that conducting such transactions was illegal. Again, the Amayas improperly equate knowledge that the funds involved

in a transaction that the conspirators have agreed to engage in are proceeds of illegal activity with knowledge that a substantive money-laundering offense or conspiring to commit such an offense violates the law.

### 2. *Sufficiency of the evidence*

#### a. *Arguments of the parties*

Angel also adopts Javier's general arguments concerning sufficiency of the evidence to convict them of the money-laundering conspiracy. Those arguments are, first, that the evidence was insufficient to support the defendants' conviction of the money-laundering conspiracy charged in **Count 2**, because the prosecution failed to prove the elements of one or more of the money-laundering objectives as well as the elements of a conspiracy and, second, that the prosecution failed to prove that either defendant knew that the conspiracy or the money-laundering objectives were illegal. They also include an argument that the prosecution offered no evidence that any agreement to launder money was ever reached.

For his own part, Javier argues and that there was no evidence to support that he ever knew or was apprised of the reporting requirements associated with large deposits of funds, so that he cannot be convicted of conspiring to commit the third "structuring" or "avoidance of reporting requirements" (§ 1956(a)(1)(B)(ii)) objective of the money-laundering conspiracy. Thus, he argues that, at most, the evidence is sufficient to prove only that he opened a bank account. He also argues that the evidence shows that he gave his personal information to a teller at a Wells Fargo branch bank in Sioux City, Iowa, simply to open an account; that Angel gave the teller the money to open the account; that, when the teller asked where the money came from, it was Angel who said, "Don't ask, you don't want to know," and it is not even clear that Javier heard that comment; and that the teller only communicated the reporting requirements for the deposit to Angel, not to Javier. Considering the elements of the substantive money-

laundering objectives for guidance as to whether or not there was a conspiracy involving him, Javier argues that the prosecution offered evidence of only one element, that is, that a financial transaction took place. Javier also argues that, even if I maintain my position that the defendant "does not have to know that the objectives of the conspiracy were illegal," as stated in a supplemental instruction, the prosecution offered no evidence to support that he knew that the money used to open the bank account was drug money or that he knew that the money was illegally obtained.

The prosecution supplements Javier's recitation of relevant facts in a few respects. The prosecution agrees that Javier opened the bank account and provided personal information to do so, that Angel provided the money for the initial deposit, and that Angel answered all of the teller's other questions. The prosecution also points out, however, that Angel, Javier, and two others traveled to California the next day at Angel's expense; that, while in California, at essentially the same time that Angel and one other person withdrew money from one account, Javier and another person withdrew money from the account that Javier had opened in Sioux City, Iowa; and that Angel was involved in an on-going, multi-drug distribution organization and had no reported income in the year prior to his arrest, which should have indicated to Javier the source of Angel's funds.

The prosecution also argues that, even if it were required to prove elements of a substantive offense as well as elements of a conspiracy to convict the defendants of a money-laundering conspiracy, the evidence was sufficient to support both defendants' convictions of actual participation in money-laundering transactions. As to Javier, the prosecution argues that he participated in transactions designed in whole or in part to conceal the true ownership and source of the funds used in the transactions—*i.e.*, the second objective alleged for the money-laundering conspiracy and the only one found by the jurors as to Javier—and the elements of a money-laundering conspiracy. The

prosecution argues that the evidence at trial showed that Javier joined in the agreement, because the evidence shows that, at the request of his brother, Javier participated in two financial transactions—depositing funds in an account in Iowa, then withdrawing those funds at a bank in California—and that those transactions served no legitimate purpose, which is enough to suggest the improper agreement. Furthermore, the prosecution argues that there is sufficient evidence to support the jury's finding that Javier knew the purpose of his agreement was to participate in a transaction to conceal the true source and ownership of the funds involved. The prosecution argues that, at most, it was required to prove only that Javier knew that the funds involved were proceeds of some form of illegal activity, not necessarily drug activity, and that the testimony of co-conspirators about Angel's drug activities shows that the funds involved were from unlawful activity and that Javier knew that was so. The prosecution argues that the evidence of Angel's drug dealing and his involvement in the money-laundering transactions demonstrates that he agreed to commit all three of the alleged objectives of the money-laundering conspiracy.

       *b.*    *Analysis*

As with a drug conspiracy, "[d]irect evidence of a [money-laundering] conspiracy is unnecessary; each element may be inferred from circumstantial evidence [and] [an] agreement may be inferred from a 'concert of action.'" *Fuchs*, 467 F.3d at 906. Also, a *reasonable inference* of an illegal agreement to launder money may arise from evidence that the defendant committed a substantive money-laundering violation, *see, e.g., United States v. Elder*, 682 F.3d 1065, 1071-72 (8th Cir. 2012); *Diaz-Pellegaud*, 666 F.3d at 498-99, but, for the reasons stated above, proof of a substantive money-laundering offense is not *required* to prove a money-laundering conspiracy offense.

Rejection of the Amayas' arguments concerning required elements of the money-laundering conspiracy offense necessarily leads to rejection of most of their arguments concerning sufficiency of the evidence supporting their convictions for that offense, where those arguments were based on failure to prove elements that I have held the prosecution was not required to prove. Instead, considering the elements that the prosecution was required to prove, I conclude that, viewing the evidence in the light most favorable to the government, neither defendant has shown that a reasonably minded jury must have had a reasonable doubt as to the existence of any of the essential elements of the money-laundering conspiracy charged against him; therefore, neither is entitled to judgment of acquittal on this charge. *See Baker*, 367 F.3d at 797. Even viewing the evidence with a more jaundiced eye than the jurors were likely to give it—that is, reweighing the evidence and the credibility of the witnesses—I do not find any miscarriage of justice in the jurors' guilty verdict on this charge against either Angel or Javier, arising from insufficiency of the evidence, that would warrant a new trial. *See Coplen*, 533 F.3d at 931. Relief becomes even less appropriate, where these alleged errors must be reviewed more stringently for "plain error," because there was no contemporaneous objection to the formulation of the elements of the offense in the instructions to the jury. *See* Section II.A.3.

Taking the element of knowledge that the transactions that the defendants agreed to commit involved proceeds of some unlawful activity, *see, e.g, Green*, 599 F.3d at 371, the prosecution is correct that the evidence supports a reasonable inference that both Angel and Javier knew that the funds involved came from Angel's drug-trafficking activities. Both defendants clearly knew that Angel provided the money for the initial deposit; both knew that Angel was involved in an on-going, multi-drug distribution organization; and both knew that he had no reported income in the year prior to his arrest that would provide an alternative, legitimate source for the funds.

Indeed, I conclude that this is a case in which a *reasonable inference* of an illegal agreement to launder money arises from evidence that each defendant committed or knew about a substantive money-laundering violation, and intended that such an objective would be committed. *See, e.g., Elder*, 682 F.3d at 1071-72; *Diaz-Pellegaud*, 666 F.3d at 498-99. As the prosecution points out, the record shows that Angel, Javier, and two others traveled to California, at Angel's expense, the day after making deposits in Sioux City; that, while in California, at essentially the same time that Angel and one other person withdrew money from one account, Javier and another person withdrew money from the account that Javier had opened in Sioux City, Iowa; and that those transactions served no legitimate purpose, which is enough to suggest the improper agreement. Furthermore, the prosecution is correct that there is sufficient evidence to support the jury's finding that Angel and Javier both knew the purpose of the agreement was to participate in a transaction to conceal the true source and ownership of the funds involved. While Javier expends a significant portion of his post-trial briefing asserting that he did not know the federal reporting requirements for transactions involving large sums of money, that argument is simply a red herring where I withdrew the "avoidance of reporting requirements" objective of the money-laundering conspiracy from the jury's consideration of Javier's guilt on that offense.

The defendants are not entitled to either judgments of acquittal or new trials on the money-laundering conspiracy on the basis of insufficiency of the evidence.

### 3.    *Other errors*

#### a.    *"Vouching"*

Both defendants assert that the prosecutor's improper "vouching" for the credibility of a witness also warrants at least a new trial on the money-laundering conspiracy. For the reasons set forth above, in Section II.B.2., I disagree. The

defendants are not entitled to a new trial or any other relief from their money-laundering conspiracy convictions based on improper "vouching" by the prosecutor.

### b. The answer to the jurors' first note

Javier also argues that he is entitled to a new trial, because I gave an incorrect response to the jurors' first note. Again, that first note indicated that the jurors believed that there was tension or a contradiction between the portion of Jury Instruction No. 5 that stated, "Without knowledge of the purpose of the conspiracy, the defendant cannot be guilty of the conspiracy offense, even if his acts furthered the conspiracy," and the portion that stated, "The prosecution does not have to prove that the defendant knew that what he did was unlawful." Again, the answer that I provided to this note was the following:

> While the two sentences in the indented explanation to element *three* of a conspiracy, on page 10 of the Instructions, may seem contradictory, they are not. The defendant must have known that the purpose of the conspiracy was to commit one or more of the objectives, but does not have to know that the objectives of the conspiracy were illegal.

Response To Juror Questions (docket no. 400-2), 1. For the reasons explained in Section II.C.1.b., the response that I provided was a correct statement of the law and was not in conflict with the allegations of **Count 2** of the Superseding Indictment. Thus, there was no "miscarriage of justice" warranting a new trial on the basis of this response. *Coplen*, 533 F.3d at 931 (reiterating that a "new trial" requires a showing of a "miscarriage of justice"). Indeed, it is not necessary to invoke what I have postulated must be more stringent "plain error" review of this alleged error, *see* Section II.A.3., to reject the defendants' prayer for relief from their convictions of the money-laundering conspiracy on this ground, because there was no contemporaneous objection

to my answer to this question:  Here, the response simply was not erroneous, let alone plainly erroneous.

Neither defendant is entitled to relief from his conviction on the money-laundering conspiracy charge on the basis of an erroneous response to the jurors' first note.

### c.    *Burden of proof*

Javier repackages his arguments that the elements of a money-laundering conspiracy improperly failed to include the elements of a substantive money-laundering offense as an error in the statement of the prosecution's burden of proof in the prosecution's jury arguments.  Specifically, he argues that the prosecution contended that it only bore the burden of proving his guilt beyond a reasonable doubt with regard to the elements of a money-laundering conspiracy, but not the underlying objectives comprising money laundering.  Javier argues that the prosecution's statement constituted an incorrect interpretation of the prosecution's obligation, and directly prejudiced his right to a fair trial, because it wrongly informed the jury of what the prosecution was obligated to show.[8]

---

[8] At the oral arguments on the Amayas' post-trial motions, Javier argued for the first time that I had also improperly "vouched" for the prosecution's misstatement of its burden of proof.  I believe that this contention is based on the following exchange during the prosecution's rebuttal closing argument:

> [THE PROSECUTOR]:  . . .  Part of the instructions tell you the act of a conspiracy doesn't even have to occur, and you can still have a conspiracy to do it.  You can have a conspiracy to launder—you can have a conspiracy to launder money without actually laundering money.  You just talk about it.  You agree to do it.  You do sufficient steps, what those might be.

Now, in this case Javier Amaya did launder money in those two transactions.

THE COURT: Excuse me.

[COUNSEL FOR JAVIER AMAYA]: Your Honor, I—

THE COURT: Just a second. I want to correct something you said.

[THE PROSECUTOR]: I'm sorry.

THE COURT: It's ambiguous, and I just want to make sure the jury doesn't have a misunderstanding. You said the act of a conspiracy doesn't have to exist. That depends—you see the ambiguity?

[THE PROSECUTOR]: I do.

THE COURT: Okay. Can you clarify it for the jury?

[THE PROSECUTOR]: I don't know that I can because—

THE COURT: I think you mean the objective of the conspiracy.

[THE PROSECUTOR]: Okay.

THE COURT: The act of a conspiracy itself has to happen.

[THE PROSECUTOR]: Yes, yes.

THE COURT: Right.

[THE PROSECUTOR]: You have to commit the crime of conspiracy. You don't have to actually commit the objectives of the conspiracy; okay? And that's very confusing. Fortunately I think we straightened it out now. You don't even have to do those things. That's not the elements. The elements are on page 8, 9, and 10, and there

Again, for the reasons stated above, the prosecution was not required to prove the elements of the underlying money-laundering objectives to prove a money-laundering conspiracy. *See, e.g., Jarrett*, 684 F.3d at 802 (making clear that a defendant "did not have to commit money laundering to be found guilty as a coconspirator" of a money-laundering conspiracy offense). Thus, the prosecution did not misstate its burden of proof, and neither Javier nor Angel is entitled to any relief from his conviction on the money-laundering conspiracy charge on this ground.

### d. *Verdict form*

Finally, the Amayas assert that they are entitled to a new trial on the money-laundering conspiracy offense in **Count 2**, because the omission of a space for the jurors to indicate whether they found Javier guilty or not guilty of this offense prejudiced both of them. The prosecution disputes this contention, as well. I find that this entirely different argument requires more analysis than the previous three "repackaged" arguments.

### i. *Arguments of the parties*

Javier argues that the error in the verdict form was such a departure from regular procedure that it constituted a severely adverse comment by me, insinuating my attitude

---

are 3 of them, and they account for both conspiracy offenses. And they are in bold, just like the instructions say. . . .

Realtime Transcript for June 1, 2012 (prosecution's rebuttal closing argument). Thus, in context, I was not "vouching" for the prosecution's statement of its burden of proof, but correcting what I believed was a misstatement or ambiguous statement by the prosecution, which could have been taken to mean that the conspiracy did not have to happen. It is true that my comment was consistent with the prosecution's argument, and the applicable jury instructions, which required proof of an agreement to commit a substantive money-laundering offense, but did not require proof that the defendant committed a substantive money-laundering offense. Again, for the reasons stated in the body of this opinion, that argument and the jury instructions were correct.

toward his guilt or innocence, notwithstanding that the error was inadvertent. He argues that the problem was exacerbated by the difference between his verdict form and Angel's, which did include a place for the jurors to indicate whether they found Angel guilty or not guilty of the money-laundering conspiracy offense. Thus, he argues that his verdict form appears "somewhat coercive," because it asks the jurors to determine his guilt or innocence while only providing a space for the jurors to show why they found him guilty. He also argues that my attempt to deal with the problem at the time that the verdict was returned caused further irregularities in the proceedings. He asserts that asking the jurors on the spot to render a verdict orally, without further deliberation or a corrected verdict form, subjected the jurors to pressure and undue influence.

Angel adopts Javier's arguments on this issue, adding that the error in the verdict form for Javier may have improperly suggested to the jurors that the verdict on the money-laundering conspiracy offense was "all or nothing," that is, that if one defendant was guilty, the other must necessarily be guilty, as well. He echoes Javier's assertion that the jurors should have been sent back for further deliberations on the verdict for both defendants, with a corrected verdict form, rather than polled on the spot to obtain their verdicts on the money-laundering conspiracy charge against Javier. Angel argues that the jurors' inquisitiveness on other issues during their deliberations was influenced by both what they perceived to be inconsistencies in the instructions concerning knowledge of conspirators as to the illegality of the objectives of the conspiracy and the defective verdict form. He argues that the irregularities caused a miscarriage of justice and warrant a new trial, at least on the money-laundering conspiracy charge.[9]

---

[9] Angel also argues that, in such a jinxed trial, at some point, jeopardy attached, and it is inappropriate to retry the defendants at all. I will consider that argument only if I find sufficient miscarriage of justice to warrant at least a new trial.

In contrast, the prosecution argues that the irregularity in the verdict form is not a basis for any relief from the Amayas' convictions on the money-laundering conspiracy charge, because, considering the verdict form in its entirety, it was not coercive or otherwise prejudicial. The prosecution points out that the issue must be reviewed for "plain error," because the defendants did not object to either the verdict form or my handling of the problem with the verdict form when it was discovered. The prosecution argues that, under a "plain error" standard of review, the defendants must, but cannot, show that the incomplete verdict form affected the outcome of the proceedings. The prosecution points out that Javier's verdict form (and the portion of Angel's verdict form for **Count 2**) instructed the jurors that they were not to complete *Step 2*, regarding objectives of the money-laundering conspiracy, unless they found the defendant in question guilty of that offense. Moreover, the prosecution points out, the jurors reached different conclusions as to the objectives of the money-laundering conspiracy that the two defendants conspired to commit, indicating that they followed the directions in the verdict form not to determine objectives unless they found the defendant guilty of the conspiracy. As to my attempt to remedy the problem with the verdict form for Javier, the prosecution points out that I explained the error in the verdict form to the jurors; that I explained that I needed to determine the jurors' true and correct verdict on the money-laundering conspiracy as to Javier, which gave the jurors adequate opportunity to indicate whether they had been misled or coerced by the verdict form; and that no jurors indicated any confusion or coercion. The prosecution distinguishes cases cited by the defendants on the ground that the circumstances here eliminated any insinuation that the court had any opinion about Javier's guilt or innocence.

The prosecution also counters Angel's argument that the error in the verdict form for Javier led the jurors to believe that the verdicts for the two defendants on the

money-laundering conspiracy were "all or nothing." Specifically, the prosecution points out that Instruction No. 1 expressly instructed the jurors that they must give separate consideration to each charge against each defendant and return a separate, unanimous verdict on each charge against each defendant. The prosecution argues that the law presumes that jurors follow the court's instructions and nothing undercuts such a presumption here. The prosecution reiterates that the jurors' differing verdicts on the money-laundering objectives that the two defendants agreed to commit demonstrates that the jurors did, in fact, give each count and each defendant separate consideration. The prosecution also points out that there was no irregularity in Angel's verdict form.

### ii.    Analysis

As explained in more detail above, in Section II.B.3., where, as here, a defendant makes no contemporaneous objection to an alleged error in a verdict form, the alleged error is reviewed for "plain error." *See Chappell*, 665 F.3d at 1014 (citing FED. R. CRIM. P. 52(b) and *Johnson*, 520 U.S. at 466-67). Thus, a defendant's conviction may be reversed, and a new trial granted, only "if the district court made an error that (1) is plain; (2) 'affects substantial rights'; and (3) 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson*, 520 U.S. at 466–67, in turn quoting *Olano*, 507 U.S. at 732, with alterations omitted). To put it another way, "'Plain-error review [of an error in the verdict form] permits reversal only if the error "was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice."'" *Weaver*, 554 F.3d at 122 (quoting *Urkevich*, 408 F.3d at 1036, in turn quoting *Griffith*, 301 F.3d at 883); *and compare Coplen*, 533 F.3d at 931 (reiterating, more generally, that a "new trial" requires a showing of a "miscarriage of justice").

Here, neither the prosecution nor I can dispute that the verdict form for Javier was plainly erroneous—notwithstanding that neither I nor any of the parties recognized

the error prior to the jurors returning their verdict, despite ample opportunities to do so—because it did not contain a space for the jurors to indicate whether they found Javier guilty or not guilty of the money-laundering conspiracy charge in **Step 1**. *See Jean-Guerrier*, 666 F.3d at 1091 (explaining that an error is "plain" if it is "clear and obvious," that is, "if it is not 'subject to reasonable dispute.'" (quoting *Puckett*, 556 U.S. at 135)). Thus, I turn to consideration of the other requirements for relief, based on the irregular verdict form.

Although I am embarrassed that such a flawed verdict form was submitted to jurors in a criminal case (or any case), I conclude that the unfortunate error in the verdict form for *Javier* ultimately did not affect *Angel's* substantial rights or the outcome of the trial *as to Angel*, *see Chappell*, 665 F.3d at 1014, or result in any miscarriage of justice *as to Angel* that is sufficient under "plain error" review, *see Weaver*, 554 F.3d at 122, or a more general "new trial" standard. *Coplen*, 533 F.3d at 931. The jurors were correctly instructed that it was up to them to determine whether or not each defendant was guilty *or not guilty* of each offense charged against him; that the jurors must give separate consideration to each charge against each defendant and return a separate, unanimous verdict on each charge against each defendant; that *not guilty* was the appropriate verdict on any charge against any defendant, if the prosecution failed to prove all elements of the charged offense; and that the jurors were not to take anything that I said or did as indicating what I thought of the evidence or what the jurors' verdict should be. *Cf. Johnson*, 495 F.3d at 977-78 (considering whether the jurors were otherwise correctly instructed about the standards applicable to their determinations); *see also* Jury Instructions Nos. 1, ¶¶ 2-3, penult. ¶; 5, final ¶; 17, 2nd and 4th "bullets." As the prosecution points out, "[j]urors are presumed to follow the court's instructions." *United States v. Patterson*, 684 F.3d 794, 798 (8th Cir. 2012) (citing *United States v. Smith*, 508 F.3d 861, 866 (8th Cir. 2007)).

Moreover, the part of Angel's verdict form for the money-laundering conspiracy in **Count 2** was correct, in that it did provide a space for the jurors to indicate whether their verdict at **Step 1** was "not guilty" or "guilty," and the jurors marked "guilty." It also included a space to indicate which one or more objectives of the money-laundering conspiracy Angel conspired to commit at **Step 2**, and the jurors found all three, which was different from their determination on the objectives of the money-laundering conspiracy for Javier. Thus, there is no evidence undermining the presumption that the jurors followed their instructions to consider the defendants separately. Under these circumstances, I find wholly unpersuasive Angel's argument that the error in Javier's verdict form somehow conveyed to the jurors that the verdicts on the money-laundering conspiracy were "all or nothing," that is, that either defendant could be guilty of that offense only if they were both guilty. Angel is not entitled to any relief from his conviction on the money-laundering conspiracy charge on the basis of the error in Javier's verdict form on that charge.

I find that a much closer question is presented on whether the erroneous verdict form affected Javier's substantial rights or resulted in a miscarriage of justice as to him. It is true that the flawed verdict form expressly stated, in **Step 2**, that the jurors should only complete that step, to determine "objectives" of the money-laundering conspiracy, "if [the jurors] found the defendant 'guilty' of the 'money laundering conspiracy' offense." *See* Verdict Form (docket no. 402), 4; *and cf. Johnson*, 495 F.3d at 977-78 (considering the instructions and verdict forms in their entirety). Also, as noted above, the jurors were correctly instructed that it was up to them to determine whether or not each defendant was guilty *or not guilty* of each offense charged against him; that the jurors must give separate consideration to each charge against each defendant and return a separate, unanimous verdict on each charge against each defendant; that *not guilty* was the appropriate verdict on any charge against any defendant, if the

prosecution failed to prove all elements of the charged offense; and that the jurors were not to take anything that I said or did as indicating what I thought of the evidence or what the jurors' verdict should be. Again, "[j]urors are presumed to follow the court's instructions." *Patterson*, 684 F.3d at 798 (8th Cir. 2012) (citing *Smith*, 508 F.3d at 866). The record also suggests that the jurors did, in fact, follow those instructions, including giving the defendants separate consideration, because they found that Angel conspired to commit all three of the charged objectives of the money-laundering conspiracy, but Javier conspired to commit only the second charged objective, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of that unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Although I had withdrawn the third objective from consideration as to Javier, this verdict still meant that the jurors had rejected the charge that Javier had conspired to commit the first objective, "promotion" of the carrying on of the unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), which the jurors had found was part of Angel's illegal agreement.

The Amayas are also correct that, in *Braley v. Gladden*, 403 F.2d 858 (9th Cir. 1968), the Ninth Circuit Court of Appeals concluded that the district court's error in failing to furnish the jurors with a "not guilty" verdict form along with a "guilty" verdict form "constituted, in effect, a severely adverse comment by the trial judge, an impermissibly grave insinuation of judicial attitude toward the ultimate issue of guilt or innocence," requiring a new trial, notwithstanding that the error was unintended and "probably result[ed] from a clerk's oversight." 403 F.2d at 860. Yet, there is no indication in the *Braley* decision of what other jury instructions told the jurors or what, if any, steps the trial court took to remedy or cure the error. Here, in contrast, considering the entirety of the circumstances, it is clear that no coercion was intended: I promptly informed the jurors that I had suddenly noticed that there was an error on

Javier's verdict form, that the error was entirely my fault, and that, to remedy that error, it was necessary to clarify whether or not they intended to find Javier not guilty or guilty of the money-laundering conspiracy charge.  I then polled the jurors not once, but twice, on their determination of guilt, the second time while polling them on the objectives of the conspiracy, which they had, in fact, indicated in the verdict form.  Realtime Trial Transcript for June 1, 2012 (verdict proceedings).  No jurors indicated the slightest hesitation in indicating that a "guilty" verdict for Javier on this offense was their true and correct verdict.  Moreover, the jurors would likely have recognized that the omission of a place to indicate their verdict of "guilty" or "not guilty" for Javier on the money-laundering conspiracy was simply a mistake, because the verdict form for Angel on the same offense involved the same two steps and *did* include a place for a verdict of "not guilty" or "guilty," and the second query about the objectives of the conspiracy was to be answered only if the jurors found Javier "guilty" of the money-laundering conspiracy.  Not only did the jurors in *Braley* not have a verdict form on the same charge for a co-defendant for comparison, but the *only* verdict form they had available had *only* a "guilty" option.

Nevertheless, I remain concerned that the jurors may have felt coerced by the error in the verdict form and, just as importantly, by my immediate attempt to correct that error by polling the jury to obtain their individual verdicts in open court.  That procedure was irregular, not least because I did not consult the parties concerning how to remedy the problem, but also because I did not give the jurors an opportunity to deliberate on their verdict in private, equipped with a corrected verdict form.  Again, I have no doubt that a far better course would have been to send the jurors back down to renew their deliberations with a corrected verdict form, after explaining the error, and particularly that the error was inadvertent, and after reiterating instructions that the

jurors should not take anything from the error as an indication of what I thought their verdict should be and that they were the sole judges of the facts.

The question of whether the procedure I did use was error so prejudicial as to warrant a new trial depends on "whether it is likely that the proceedings conducted by the trial court coerced the juror[s] in arriving at [their] final verdict." *Amos v. United States*, 496 F.2d 1269, 1272 (8th Cir. 1974) (considering whether continued polling of jurors on all fourteen counts against the defendant was error after one juror indicated he had agreed to the verdict on only one count). Although I can find no opinions of the federal Circuit Courts of Appeals or the Supreme Court squarely on point with the circumstances presented here, I can find some that provide guidance.

In *United States v. Penniegraft*, the Fourth Circuit Court of Appeals concluded that there was "'a world of difference'" between juror coercion claims arising from polling of a deadlocked jury, during which it is never appropriate to expose the numerical division of the jurors, and juror coercion claims arising from polling after a jury has reached a verdict, during which it is appropriate for the public to learn whether any jurors actually disagree with a conviction. 641 F.3d 566, 576-77 (4th Cir. 2011) (quoting *Lyell v. Renico*, 470 F.3d 1177, 1183 (6th Cir. 2006)). With the benefit of hindsight, I believe that there is also "a world of difference" between polling a jury that has rendered a verdict on a properly composed verdict form, to determine whether any jurors actually disagree with a conviction, and *substituting* polling of the jury for the rendering of a verdict on a properly composed verdict form after private deliberations. The latter circumstance potentially has the same effect as polling deadlocked jurors about their division, which the Supreme Court also explained was reversible error, for the following reasons:

> We deem it essential to the fair and impartial conduct of the trial that the inquiry [into the division of a deadlocked jury] itself should be regarded as ground for reversal. Such

procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberation every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

*Brasfield v. United States*, 272 U.S. 448, 450 (1926); *see also Penniegraf*, 641 F.3d at 575-76 (quoting *Brasfield*, 272 U.S. at 450). Here, resorting to polling of the jurors to determine their verdict in the first instance served no useful purpose that could not have been attained by sending the jurors back down for further deliberations and the rendering of a verdict on a properly composed verdict form. In particular, because the verdict form is the proper method for a jury to render its verdict, polling of a jury as a substitute potentially has an improper influence upon them that is serious, although not measurable, because every consideration other than that of the evidence and the law, and the rendering of a verdict, after private deliberation, on a properly composed verdict form, should be excluded. To put it another way, substituting polling of the jurors for the rendering of a verdict on a properly composed verdict form may be coercive, as it causes the jurors to render a verdict prematurely, without the ordinary safeguard of private deliberation. *Cf. United States v. Gambino*, 951 F.2d 498, 501-02 (2d Cir. 1991) (stating that continuing to poll a jury after one juror disagrees with the verdict is reversible error "only when it is apparent that the judge coerced the jurors into prematurely rendering a decision"); *United States v. Carraway*, 108 F.3d 745,

751-52 (7th Cir. 1997) (same standard); *see also Penniegraf*, 641 F.3d at 577 (quoting *Gambino*, 951 F.3d at 501-02).

Thus, considering the entirety of the circumstances, there was a plain error in the verdict form; that error had an improper influence on the jurors that was serious, although not measurable, and thus affected Javier's substantial rights; and the error was such a departure from regular procedure as to seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See Chappell*, 665 F.3d at 1014. I am not willing to let the verdict against Javier stand under these circumstances, especially because the evidence against him was underwhelming.

Therefore, while Angel is not entitled to relief from his conviction on the money-laundering conspiracy charge because of the error in Javier's verdict form, Javier is entitled to relief from his conviction on that offense on this ground.

### 4. Summary

None of the errors asserted by the Angel Amaya warrant relief—that is, either a judgment of acquittal or a new trial—on his conviction of the money-laundering conspiracy in **Count 2** of the Superseding Indictment. Thus, that part of Angel's post-trial motion seeking such relief is denied. On the other hand, the error in the verdict form and the manner in which I tried to cure it do constitute plain error and warrant relief for Javier from his conviction on the money-laundering conspiracy charge.

## III. CONCLUSION

Notwithstanding that the trial of the Amayas on the drug conspiracy and money-laundering conspiracy charges in this case was jinxed, it ultimately did reach a jury verdict on the third try. As the Eighth Circuit Court of Appeals has repeatedly observed, "'A defendant is entitled to a fair trial, not a perfect one.'" *United States v. Sanchez-Florez*, 533 F.3d 938, 942 (8th Cir. 2008) (quoting *United States v. Nichols*,

416 F.3d 811, 818 (8th Cir. 2005), with citation and quotation marks omitted). I doubt that any of the participants would argue that the Amayas received a "perfect" trial, but, at least as to Angel, their third trial was nevertheless a fair one and the resulting verdicts are worthy of confidence. *See id.* As to Javier, the jinx not only continued, but involved plain errors, both in the verdict form and in my attempt to cure the problem with the verdict form, sufficient to affect Javier's substantial rights and the public reputation of judicial proceedings, such that a new trial is warranted for him on the money-laundering conspiracy charge.

THEREFORE,

1.      Defendant Javier Amaya's June 5, 2012, renewed Rule 29 Motion For Judgment Of Acquittal (docket no. 412) is **denied in its entirety**;

2.      Defendant Javier Amaya's June 8, 2012, Motion For New Trial And Judgment Of Acquittal/Or Renewed Motion For Mistrial (docket no. 417) is **granted**, and a new trial will be set by separate order; and

3.      Defendant Angel Amaya's June 11, 2012, Motion For New Trial And Judgment Of Acquittal And/Or Renewed Motion For Mistrial (docket no. 422) is **denied in its entirety**.

FURTHERMORE, this matter shall proceed to sentencing for Angel Amaya at a date and time set by subsequent order.

**IT IS SO ORDERED**.

**DATED** this 10th day of August, 2012.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA